## STATE v. PALMER.

Evidence which is competent upon other grounds is not excluded because it tends to show that the defendant has committed other crimes than that for which he is on trial.

Evidence tending to show a motive for the commission of the crime charged against the defendant is admissible.

Evidence tending to show an intention or attempt by the defendant to escape from jail while held awaiting trial is admissible.

INDICTMENT, for the murder of Henry T. Whitehouse, who was assistant engineer at the electric light station in Portsmouth, and was murdered May 27, 1888. The defendant was engineer at the same station until some time in February, 1888.

Walter Raitt testified: "About the first of last May I met the defendant, and asked him if he was at the light station now. He said no, he had had some trouble about things being stole. Them fellows had blowed on him, and he would fix them for it. I had been at the light station six or eight times at night. Reagan, Whitehouse, and the defendant used to be there."

The following testimony was received, subject to the defendant's exception:

Fred S. Palmer: "Am superintendent of the Electric Light Co. The defendant was engineer, Whitehouse was his assistant, and Reagan was fireman. Before the defendant left I had talk with him about a change of hours, so that Whitehouse would begin work at eight o'clock in the evening instead of six. He thought he ought to have Whitehouse to help him from six to eight. I thought he showed some feeling about the change. He left Saturday morning at one o'clock, about the fifth of February, 1888. He left of his own free will, as the result of a notice I gave him. He was discharged to leave in two weeks or before. He had the option. I intended to discharge both him and Whitehouse. Thought I could get one man to do what they were both doing for less wages than I was paying the defendant, and told him so, and he said he wouldn't stay for less pay than he was receiving. The morning after he left, the key on one of the engines had been struck and driven in, so that the wheel couldn't turn over. I saw the defendant and told him to fix the engine or I should put him behind the bars before two hours. He went and fixed it. After he left I got a search warrant, and got the defendant and Sheriff Coffin at my office, and accused the defendant of taking articles from the station. He denied it. I told him I had been aware for some time of his taking articles from the station. I told Coffin we must go and search the defendant's house. Then the defendant acknowledged taking them, and didn't want his house searched. Think this was about

February 11. I thereupon went with the defendant, without Coffin, to the defendant's house. He presented his tool-box, and I examined it. I had no mark to identify things, but laid out what I thought were ours, but came to a pair of pliers I had marked. I proved them to him by the mark. Told him to bring the rubber hose he had taken, and he brought it. May 23, the Wednesday before Whitehouse was killed, I went to the defendant's house again with Coffin and Whitehouse, and searched for stolen articles. Whitehouse was active in the search, and identified some things. We took some things away. The defendant's mother was there. The defendant was not there."

Dennis Reagan: "I was fireman at the light station. The morning after the defendant left there was trouble with the machinery. It was Whitehouse's business to take the engine apart and clean it. At this time he couldn't turn it over. Fred S. Palmer was informed of it."

Edward D. Coffin: "Am sheriff and keeper of the jail. When the defendant was put in jail I searched him and took everything he had. Afterwards I searched and found a razor and a gunwrench in his pocket. A hole, perhaps eight inches by ten, had been broken in the wire netting of his outside cell window since he has been there. There was another prisoner in the same cell."

He also testified: "About the twenty-third of May, the Wednesday before the murder, I went to the defendant's house with Fred S. Palmer and Whitehouse, and searched it. Whitehouse seemed to do the most. He was the most prominent in searching. The defendant's mother went round with us. Fred S. Palmer gave me a schedule of the articles the defendant was accused of stealing. I took it and gave it to the defendant's mother, and told her to give it to James, and to tell him to bring the things to me. I saw the defendant the next Friday night at the depot at half-past seven, May 25. He came to me and said he had been to the jail and my office to see me, that he never took any of the things in the schedule, never took anything, but that Palmer (Fred S.) and Whitehouse got this thing up to ruin his reputation. Said I, ' Jim, it looks well for you to come down and see me, and I'm going to give you some advice; that is, that you leave this town, and go away somewhere and go to work at your trade;'—that I had a warrant for his arrest, and if he would go away I wouldn't use it. He thanked me. He spoke earnestly about Palmer and Whitehouse getting it up, etc. . . . . . The netting on the window of the cell was put there to prevent things being passed in to the prisoners by their friends from the outside."

Mrs. Frances Rutter, the defendant's mother, a witness called by him, testified that on the day the house was searched by Coffin she gave the defendant the memorandum which Coffin left there for him, and told him Coffin and Palmer had been there, and

described the other man, and the defendant said it must be White-house.

The stenographer's notes of all the testimony may be .used by the defendant as a part of the case.

Judgment having been rendered on the verdict against the defendant, he filed the foregoing bill of exceptions, which was allowed.

*D. Barnard*, attorney-general, and *S. .W. Emery*, solicitor, for the state.

*G. Marston* and *C. Page*, for the defendant.

SMITH, J.   The testimony of F. S. Palmer, Reagan, and Coffin, as to conversations with the defendant, and as to· matters occurring before the murder, was relevant if it tended to show a motive for the commission of the crime with which he was charged; and the question is, Did it tend to show motive? Their testimony was inadmissible for the purpose of discrediting the defendant.   His character could not be attacked by showing that he had been guilty of other crimes or offences.   It was not competent to prove that he committed the crime of larceny or malicious mischief for the purpose of showing that he was guilty of the crime for which he was on trial.   *State* v. *Lapage*, 57 N. H. 245.   But, upon well settled principles, the state was entitled to introduce any evidence having a legal tendency to prove any material fact in issue, not-withstanding it might tend to prove the commission of another and separate offence.   It is not a valid objection to evidence other-wise competent, that it tends to prove the prisoner guilty of a dis-tinct and different felony.   *Commonwealth* v. *Choate*, 105 Mass. 451, 458.   Thus, evidence of other offences is admissible for the purpose of proving malice, guilty knowledge, intent, motive, and the like.   *State* v. *Lapage*, *supra*, 288, 293–295; Rosc. Cr. Ev. 81–84; 1 Whar. Cr. Law, *ss.* 639, 640.

Upon an indictment for murder, evidence of former grudges and antecedent threats is received, because it tends to show malice in the defendant against the deceased.   1 Phil. Ev. 169; Rosc. Cr. Ev. 71.   Such evidence is admissible because it supplies a motive for the act.   The absence or presence of motive renders the alleged fact less or more probable.   *State* v. *Dearborn*, 59 N. H. 348; Steph. Cr. Law 88; Best Ev. 571, 572; Steph. Dig. Ev., *art.* 7. Motive does not of itself prove guilt.   It is a unit contributing to make up the sum total of proof, and proof of the guilty act need not be established by evidence *aliunde* before the question of motive is considered.   *State* v. *Cohn*, 9 Nev. 179.   The natural and logical course of human thought, when a crime . has been committed, is to inquire, What motive could have influenced a sane person to do such an act?

The testimony of Raitt, not objected to and unobjectionable, if credited by the jury, proved that the defendant believed he had lost his position at the electric light station in consequence of a charge of theft made against him by the deceased, or of the exposure by the deceased of theft actually committed by the defendant. The defendant's threat, that he would "fix them for it," showed that he harbored feelings of enmity against the deceased, and intended to do him some bodily harm. The evidence tended to show a motive stimulated by revenge for the commission of the crime with which he was charged. The evidence objected to was competent for the same purpose. The absence of any apparent motive is always a fact in favor of the accused. Hence any fact which supplies a motive for the crime charged is relevant. Best Ev. (Chamberlayne's ed.), *s.* 453; *State* v. *Dearborn*, 59 N. H. 348. On the question of motive, the mutual relations of the prisoner and the deceased, including their mutual temper and their feelings toward each other, are important. "Any motive rendering the killing probable, or explaining it against inherent probabilities, or otherwise helpful to the jury as a circumstance in the case, may be shown against the defendant." 2 Bish. Cr. Proc. (3d ed.), *ss.* 629, 630. The testimony of these witnesses tended to show the grounds of the defendant's animosity,—that he had been exposed by the deceased, or believed he had, in regard to his thefts from the company and his tampering with the engine, or that he had been wrongly accused by the deceased of misconduct in these particulars.. It was competent for the state not only to show threats and hostile feelings, but the grounds the defendant had or believed he had, for his hostility. *Murphy* v. *People*, 63 N. Y. 590. How much weight the evidence might have with the jury was quite another consideration. The question of remoteness was one to be settled at the trial. If the court could see it might have any, it was competent. If the evidence tended to show that the deceased was, or the defendant had reason to suspect he was, the person who had caused him the loss of his situation with the company, and had brought upon him the suspicion and charge of larceny, it was admissible, not as evidence of another offence or offences, but of other transactions in which the defendant was engaged, and which showed that he had a motive to do the deceased bodily harm. Whether the ill feeling shown by the defendant in regard to the change of hours for beginning work, as testified to by F. S. Palmer, was entertained .against the witness or against the deceased, was for the jury to determine upon consideration of all the evidence in regard to their mutual relations. If it was against the former, the evidence was not harmful, and its admission affords no reason for setting aside the verdict. But it was competent to be considered with other evidence of the mutual relations of the deceased and the defendant. The participation of the deceased in the search for stolen property, brought home to

the knowledge of the defendant by his mother, was calculated to arouse in him feelings of animosity. The case finds that his mother gave him the memorandum left by Coffin for him, and told him Coffin and Palmer had been there, and described the other man, and the defendant said it must be Whitehouse.

It was claimed at the argument that the stenographer's notes show that he said he " thought it was Whitehouse, but did n't know." If the fact is assumed to be as claimed, it did not render the evidence incompetent. Evidence that he believed the deceased had been instrumental in losing him his position at the light station, and in involving him, either rightly or wrongly, in the charge of larceny and malicious mischief, was admissible, as evidence would be that the fact was so. In either case the grounds of the defendant's hostility would appear. The declarations of the deceased, communicated to the defendant, would have been admissible if they were such as to influence his conduct. His acts, so far as they might influence the conduct of the defendant, were admissible for the same reason.

The fact that the defendant had in his possession, after he was committed to the jail, a razor and a gun-wrench may have had some tendency to show his guilt. The razor, if not the wrench, could be used in aiding his escape. It is claimed that the wrench was a thing so insignificant no use could be made of it in effecting an escape. If this was so, the evidence as to the wrench was immaterial, and could not confuse or embarrass the defendant in his defence. *State* v. *Clark*, 23 N. H. 429, 434. Evidence that the wire netting of the outside window of the defendant's cell had been broken, in connection with the evidence as to the razor and wrench, tended to show that the prisoner, with or without the help of persons outside, was planning an escape. Flight or an attempt at an escape is the usual concomitant of crime. The guilty naturally flee; an innocent person ordinarily has no reason to flee. Evidence of an escape or of an attempt at an escape is therefore admissible, because it tends to prove guilt, or is a fact from which consciousness of guilt may be inferred; but it may be entitled to little or no weight, according to the circumstances under which it was attempted. What weight should be given to this testimony from Coffin was for the jury to determine under proper instructions from the court, which it must be assumed were given. *State* v. *Rand*, 33 N. H. 216, 224; *People* v. *Stanley*, 47 Cal. 113; Rosc. Cr. Ev., 17; 1 Bish. Cr. Proc., *s.* 1250. If the razor and wrench came properly into his possession, and if he was innocent of the breaking of the netting, it does not appear that he made any disclosure of the same to the officers of the jail, as he naturally would have done.

The evidence was open to explanation, and if the explanation was satisfactory to the jury, no injustice was done by its admission. If not explained, the jury would give it such weight as it

deserved. That the evidence might not be entitled to very much consideration does not affect the question of its admissibility.

*Exceptions overruled.*

DOE, C. J., and CARPENTER, J., did not sit: the others concurred.