Merrimack, }
May 2, 1911. }

### BURNHAM *v.* STILLINGS *& a.*

A physician who serves upon a hospital staff without compensation, and undertakes the treatment of a patient at the institution without any contract of employment between them, is liable for injuries attributable to his failure to exercise due care.

The erroneous exclusion of testimony does not furnish ground for reversal if the facts sought to be shown thereby are subsequently put in evidence by the excepting party.

A medical treatise, if admissible, cannot be put in evidence without proof that it is regarded as authoritative, and its contents must be shown by the production of the book itself.

Where a statement in a medical treatise is referred to upon the cross-examination of an expert witness for the sole purpose of testing his credibility, its use in argument as substantive evidence upon a material issue, against the objection of the opposite party, is erroneous and furnishes cause for setting aside a verdict.

A party securing the admission of evidence for a competent purpose cannot use it for a purpose for which it is incompetent.

A failure to object to evidence offered for a particular purpose is not a waiver of objection to its use for another and incompetent purpose.

Where the jury are instructed to disregard incompetent evidence which is stricken out or improper remarks of counsel which are withdrawn, the question whether the error is cured so that the verdict is not affected thereby is one upon which the finding of the trial court is ordinarily conclusive; but where the jury are permitted to consider incompetent matter laid before them in evidence or by argument, to the prejudice of a party and against his objection, the erroneous ruling is cause for setting aside the verdict, and a finding of the presiding justice that the trial was fair is immaterial.

CASE, for personal injuries alleged to have been caused by the negligence of the defendants. Transferred from the October term, 1908, of the superior court by *Chamberlin*, J., on the defendants' exceptions to the denial of their motions for a nonsuit and the direction of a verdict in their favor and to the argument of the plaintiff's counsel.

The plaintiff fell from a tree, injured his knee, broke his thigh bone, and was received into the public ward of the Margaret Pillsbury Hospital at a time when the defendants had charge of all patients in that ward.

*Martin & Howe (Mr. Howe* orally), for the plaintiff.

*Niles & Upton, James W. Remick,* and *Leach, Stevens & Couch* (*Messrs. Niles* and *Remick* orally), for the defendants.

PARSONS, C. J.    There is no claim that the declaration did not state a cause of action, or that there was error in the instructions to the jury.    The defendants took no exceptions to the evidence.    The only questions open here are those presented by the exceptions to the denial of the motions for a nonsuit and verdict and to the argument of counsel.    Upon the first question the only inquiry is whether the defendants are legally at fault for any injury the plaintiff has suffered for which he is not himself to blame as matter of law.

So far as the plaintiff employed any one to treat him, he employed the hospital without advice or suggestion from the defendants.    So far as the defendants were employed by any one, they were employed by the hospital.    As there was no contract between the plaintiff and the defendants, they owed him no duty imposed on them because of, or in any way springing from, the contract of employment.    They owed him, however, the duty in the course of their employment not to do anything they either knew or ought to have known would injure him.    Having with his assent undertaken to treat the plaintiff, the defendants were bound to exercise care in what they did, and are liable if their failure to exercise due care injured him.    "The confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance of it."    *Hammond* v. *Hussey,* 51 N. H. 40, 50; *Edwards* v. *Lamb* 69 N. H. 599; *Pittsfield etc. Co.* v. *Shoe Co.,* 71 N. H. 522, 534; *Burrill* v. *Alexander,* 75 N. H. 554. The terms upon which the plaintiff received the services of the hospital do not appear.    The liability of the hospital is not involved. If the defendants received no compensation whatever, that fact, while material upon the question of the care required of them, would not excuse them for their failure to exercise such care as the circumstances demanded.    *Edwards* v. *Lamb,* 69 N. H. 599; *Hammond* v. *Hussey,* 51 N. H. 40, 50.

The plaintiff was treated for a fracture of the left femur.    The fracture was reduced by the defendants, who at that time and for thirty days thereafter constituted the surgical staff of the hospital and attended the plaintiff during the continuance of their term of

service.  The plaintiff now complains that the thigh bone is mis-shapen and shortened, and that he has largely lost the use of the knee joint.  Upon the question whether this result is due in any part to want of care of the defendants in reducing and treating the fracture, the evidence is conflicting.  There was delay in the union of the broken fragments.  The defendants' evidence was that the bone was properly set and cared for and the parts in proper apposition when they gave up the case, although union had not then taken place.  They ascribed the delay in union to a constitutional defect in the plaintiff's system, and the present condition to a change in the position of the parts of the bone after the plaintiff was discharged from the hospital, due to the same cause.  The plaintiff claimed that the delay in union was caused by failure to properly reduce the fracture, and offered evidence that the present condition could not have been caused as the defendants claimed, but must have been due to the fact that the parts were not in proper position when union took place.  Whether there was a change after the defendants gave up the case, and whether the lack of apposition of the parts, if it existed, could have been discovered by ordinary care, was for the jury.  There is no occasion to discuss minor differences in the testimony as to the details of the treatment, the character of the splints and extension, and the attachment of the latter.  It is sufficient to say that if the plaintiff's account of what was done is believed and the defendants' disregarded, and full credit given to the theories of his witnesses, the conclusion that the plaintiff was injured to some extent through the defendants' want of care is not so clearly unreasonable that this court can say as matter of law that the fact cannot be found in his favor.  With the question which set of witnesses are entitled to belief this court cannot interfere.  Nor does the record present the question whether the plaintiff has been permitted to recover for injuries not caused by the defendants' fault.

The defendants claim to have taken an exception which they urge presents the general question of a mistrial.  This was in discussion over a question asked by the defendants of one of their witnesses as to the relation between the physicians and the hospital, in the course of which the court said: "But the trouble I had in mind particularly was the question of their relation to the hospital, as to whether or not they were acting as Good Samaritans, as you suggested, gratuitously, or for pay.  I do not see that that affects the legal status."  To this counsel responded: "Of course, we must

submit to your Honor's ruling. If your Honor will kindly note an exception." Further discussion ensuing, the defendants' counsel conceded the correctness of the court's position as further explained and stated that he could not take any exception. The question was asked and answered. If this discussion and the suggestion of an exception can be regarded as a ruling, subject to exception, that the gratuitous character of the defendants' services could not be shown, the defendants can take no advantage therefrom because subsequently they were permitted to show, subject to the plaintiff's exception, that the hospital was a charitable institution, and that the services of the physicians and surgeons to ward cases were rendered without compensation; and, furthermore, the defendants in putting in the evidence distinctly disclaimed any claim of exemption from liability for their personal negligence on that account.

The argument apparently goes upon the ground that the case was argued and presented to the jury as if it were against the hospital. If the defendants did not own or manage the hospital, or did not bring the plaintiff there or advise his coming, they are not chargeable for default in the hospital equipment or management, *i. e.,* because of the delay in setting the fracture due to the want of proper splints, the absence of a fracture bed, and the failure to use ether or an X-ray machine if the hospital did not provide them. They are not responsible for the breaking of the bed unless there was evidence that they knew or ought to have known its condition was such that it was likely to break down as it did; they are not responsible for the use of the facilities furnished by the hospital unless in the exercise of ordinary care they should have refused to employ in such a case such as the hospital furnished and by like care they could have procured more suitable appliances; they, of course, also were not responsible for any default of other employees of the hospital in the management of the case before or after they ceased to have charge of it or of each other. If they were charged on any of these grounds, the verdict was wrongly found against them. There is nothing, however, in the record as presented to this court which raises these questions. The exception to the refusal to order a verdict or nonsuit presents only the question whether on the evidence any verdict can be found for the plaintiff. Whether the plaintiff's failure to inform the physicians of the bunch he claimed to have discovered after the fall of the bed was a part of the cause of all the injury of which he complains, so as to preclude him from recovering at all, was a question of fact, as well as the existence of

the bunch itself.   The jury may have found that the plaintiff and his non-professional witnesses were mistaken in their diagnosis, and still found the fact of delayed union due to failure to properly reduce the fracture.

There was evidence that the plaintiff has not experienced as complete a recovery as could be expected under ordinary circumstances if treated with ordinary care and skill.   A part of the injury complained of (the stiffness of the knee joint) is ascribable to the length of time the delay in union required the application of a weight to keep the leg extended, as well as to the manner in which the traction was attached to the leg, which the plaintiff's expert claimed was unskillful and improper.   The cause of the delay in the union of the fragments was therefore a material issue in the case.   In proof of the existence of the constitutional taint to which the defendants ascribed the plaintiff's poor recovery, they offered evidence that shortly after the administration of iodide of potassium (KI), a specific remedy for syphilis (the taint suspected), union of the bone began, or, in the language of the physicians, *callus* was thrown out. Hence, as the case turned, it became a vital question whether the improvement shown after the administration of that drug indicated the presence of syphilis, hereditary or acquired; or in other words, whether iodide of potassium (KI) is a specific for syphilis.

In argument the plaintiff's counsel said: "Now let us go into this KI a little more.   Why, when they said KI is used for syphilis, we had to look it up, and we found this laid down in the United States dispensary book, which Dr. Beaton admits is in every drug store in the land, and he says they were obliged to have it.   Perhaps you, gentlemen, have seen the big book on the prescription case.   'Iodide of potassium for softening inflammatory products and removal of exudates not of a syphilitic nature is one of the most reliable remedies we have.'"   The defendants excepted to the argument upon the ground that the statement was not in the case and to the use made of it.   The plaintiff's counsel said: "It was evidence; I asked it of Dr. Beaton."   The record proceeds:

Court.   "You are simply repeating a question you asked of Dr. Beaton?"   Mr Martin.   "Yes."

Court.   "There is an exception that it was not in the case."   Mr. Martin.   "The evidence I certainly inquired for."

The dispensatory was referred to in the cross-examination of Dr. Beaton, an expert called by the defendants; but when the exception

was taken counsel was not arguing the reliability of Dr. Beaton's testimony, but was asking the jury to find on the authority of the dispensatory that iodide of potassium (KI) was not a specific for syphilis. Dr. Beaton testified upon direct examination, in accordance with the defendants' theory, that the presence of syphilis was indicated by the results from the use of iodide of potassium. A portion of his cross-examination follows:

Q. "Outside of a tonic, what is iodide of potassium used for?" A. "It is principally used—it is used as a specific in syphilis; it is used in rheumatism with very doubtful benefits."

Q. "It is used for softening of inflammatory products and the removal of exudates not of syphilitic nature. Isn't it one of the best remedies for that? That is just as I have quoted it." A. "No, sir."

Q. "Isn't that laid down so in the United States dispensatory?" A. "Yes; but we don't practice by the United States dispensatory."

Q. "That book is in every drug store?" A. "Yes; but we don't go into the drug store for our information."

Q. "Well, that book is in every drug store in the land, isn't it?" A. "It should be."

Q. "And this that I have read is laid down as an authority in that book, isn't it?" A. "It depends upon when the authority is written."

Court. "Just answer the question." A. "It is authority so far as the book is concerned."

The book was not received or offered as evidence. The defendants had no opportunity to object to the book as substantive evidence until counsel attempted to so use it in argument, when they promptly excepted. It is therefore unnecessary to consider whether medical treatises of authority are admissible as substantive evidence. *Dole* v. *Johnson*, 50 N. H. 452, 456; *Ordway* v. *Haynes*, 50 N. H. 159. If so admissible, they cannot be admitted without proof that they are regarded as authoritative (2 Wig. Ev., s. 1694), and certainly not upon proof that they are not so regarded. Neither can their contents be shown except by the production of the book. 2 Wig. Ev., s. 1179; 3 *Ib.*, s. 1694 (2). Nothing of this sort was done or attempted. It cannot be inferred from the record of the cross-examination of Dr. Beaton that counsel understood he was putting the dispensatory into the case as substantive evidence, or was doing anything except seeking admissions from the witness to weaken the force of his testimony. The record shows several

instances of similar cross-examinations which may be competent. *State* v. *Wood*, 53 N. H. 484, 494; 3 Wig. Ev., s. 1700 (*b*).

Conceding that the reference to the dispensatory was properly in the case upon the issue of Dr. Beaton's credibility because competent thereon, or because the defendants did not object when it was offered for that purpose, the statements of the dispensatory were not in the case as substantive evidence, for the simple reason that the dispensatory was not offered as such evidence. The defendants are not in fault for not objecting to evidence not offered to be put in. Their rights are fully protected by their exception taken when the use of the evidence for a purpose for which they considered it incompetent was first attempted. As the court did not sustain the defendants' exception, but allowed the argument to stand upon the assertion of counsel that he was simply repeating a question asked of Dr. Beaton, the jury, if they recalled the testimony, must have understood they were at liberty to consider the statements of the dispensatory so introduced as substantive evidence upon the vital point in the case. This was, in effect, a ruling of law that the evidence so introduced was competent for the use being made of it, which if erroneous must destroy the verdict. *Olney* v. *Railroad*, 73 N. H. 85, 90, 91; *Harrington* v. *Wadsworth*, 63 N. H. 400; *State* v. *Foley*, 45 N. H. 466.

As in no view of the law as to the admissibility of medical treatises in evidence was the dispensatory made competent evidence on the record, the ruling was erroneous, unless a party securing the admission of evidence for one purpose for which it is or may be competent has the right to use it for purposes for which it is plainly incompetent. Such is not the law. *Lydston* v. *Company*, 75 N. H. 23, 25. Upon a general exception to evidence, a verdict is not set aside if the evidence is competent for any purpose, provided it is not shown it was offered or used for a purpose for which it is incompetent. *Smith* v. *Morrill*, 71 N. H. 409, 411; *Rogers* v. *Kenrick*, 63 N. H. 335. Conversely, the failure to object to the introduction of evidence competent, or offered, for a particular purpose is not a waiver of an objection to its use for a purpose for which it is incompetent or was not offered. The reason is that the law applies the evidence to the issues upon which it is competent and refuses to permit it to be applied against objection upon issues to which it is incompetent. It could not be found from the record that the defendants had agreed to the use of the dispensatory as substantive evidence, or that the

plaintiff's counsel so understood. *Walker* v. *Walker*, 64 N. H. 55; *State* v. *Daniels*, 44 N. H. 383.

The court denied a motion to set aside the verdict, based, among other grounds, upon the character of the argument of the plaintiff's counsel, and found that the trial was fair. It is claimed that this finding disposes of the exception under consideration; but upon the question involved, the finding is as immaterial as the finding that "the verdict was supported by the evidence" is upon the exception to the refusal to direct a verdict. The defendants had a right to a fair trial—fair because conducted in accordance with all the provisions of the constitution, the statutes, and the rules of the common law which are legally essential to such a trial; in other words, to a trial fair as matter of law—not merely to a trial which the tribunal conducting it, or some other, finds fair in fact. They were entitled to a trial upon legal notice, upon a declaration legally sufficient to inform them of the charge against them; a trial before a legally constituted tribunal, a duly qualified jury and judge; a trial upon evidence competent to prove the issue presented in a legal manner; and no sound verdict could be found against them unless the evidence presented was as matter of law sufficient to authorize it. All of these requirements may perhaps be waived expressly or by implication; but no trial is fair as matter of law if conducted in violation of law against the objection of the party complaining. A trial before eleven jurymen, or by a single referee against a party's objection, or a verdict to which all the jury did not agree, would not be helped by a judicial finding that the trial was fair and the verdict supported by the evidence.

While errors may occur in the course of a trial, they are not necessarily incurable if taken in season. Incompetent evidence inadvertently admitted may be stricken out and the jury instructed to disregard it. Whether this should be done and the trial allowed to proceed, or the trial be stopped, is, as said in the earlier cases, a question of discretion, but in the later is called a question of fact for the trial court. The question of fact involved is whether the admitted error is cured so that the verdict is not affected thereby. Upon this question the finding of the trial court is ordinarily conclusive. *Lee* v. *Dow*, 73 N. H. 101; *Goodwin* v. *Scott*, 61 N. H. 112; *Burnham* v. *Butler*, 58 N. H. 568; *Judge of Probate* v. *Stone*, 44 N. H. 593, 607; *Deerfield* v. *Northwood*, 10 N. H. 269; *Hamblett* v. *Hamblett*, 6 N. H. 333. Even if this course is followed, "if it appears" to the presiding judge "after verdict that the jury have been prejudiced

by the objectionable evidence, he is warranted in setting the verdict aside." *Burnham* v. *Butler*, 58 N. H. 568, 569. In such a case a refusal to set the verdict aside would involve a finding that the error had been cured and that the trial was fair. But "if incompetent, material evidence is introduced, and not withdrawn or excluded before the case is submitted to the jury, it is cause for a new trial." *Mason* v. *Knox*, 66 N. H. 545, 546.

The rules governing the procedure where incompetent matter is introduced into the case during the argument of counsel are much like those governing the practice where the incompetent matter comes from witnesses. *Demars* v. *Company* 67 N. H. 404, 407. The error is not incurable, the incompetent matter may be withdrawn, and the jury asked and instructed to disregard it. Then the question of fact remains: Has the error been cured? If it has, the trial can be found to be fair. In these cases the burden of securing such a finding has been placed upon the offending counsel. *Bullard* v. *Railroad*, 64 N. H. 27. But the material fact which saves the verdict is the finding that the error was cured and the trial fair—not at whose request the finding was made. Accordingly, in *Lee* v. *Dow*, 73 N. H. 101, where the remarks objected to were withdrawn and the jury instructed to disregard them, the refusal of the court to set aside the verdict because of the remarks of counsel was held to be a decision that the error was cured. The admission of incompetent, immaterial evidence is not cause for setting aside a verdict unless the party objecting is prejudiced thereby. *Cook* v. *Brown*, 34 N. H. 460, 470. Accordingly, in *State* v. *Danforth*, 73 N. H. 215, cited by the plaintiff, where the act of counsel complained of had no logical bearing upon the questions at issue and hence was immaterial, it was held that the ruling of the court against the objection, so far as it was matter of fact, was a finding that the trial was not thereby rendered unfair, which necessarily includes the conclusion that no prejudice was created by what was done.

Whether irrelevant evidence was also prejudicial, and whether the jury obeyed the instructions and disregarded evidence which was withdrawn, as the presumption is they did (*Mitchell* v. *Railroad*, 68 N. H. 96), are questions of fact for the trial judge. But whether a particular piece of evidence which the jury were instructed to consider affected the result is a different question. The presumption is that it did, and no evidence exists upon which it can be found that it did not in fact. Precisely such a finding by the

presiding judge was overturned in *Mason* v. *Knox,* 66 N. H. 545, 546, upon the ground that as matter of law the error could not be cured in that way.

But it is unnecessary to pursue the subject further. No finding has been made or attempted that the result was not affected by the objectionable argument. The finding that the trial was fair and the verdict supported by the evidence rests upon the assumption that all the evidence submitted to the jury was competent for their consideration. As it appears that they were permitted to consider incompetent, material evidence, the findings and the verdict fall together. The use of the evidence for a purpose for which it was not introduced or competent was not an attempt merely to draw an erroneous inference (*Leavitt* v. *Company,* 72 N. H. 290), but the statement of a fact as to which upon the question argued there was no such evidence in the case. So far as an error of law was involved in the attempt of counsel to make such use of the evidence, the failure of the court to sustain the exception or to direct the jury to disregard the argument was an erroneous ruling that the course pursued by counsel was rightful. *Harrington* v. *Wadsworth,* 63 N. H. 400. A verdict is not set aside for the admission of incompetent evidence to prove a point that is otherwise conclusively proved or is conceded. *Rowell* v. *Railroad,* 58 N. H. 514. But although there was other evidence that iodide of potassium is used for the removal of exudates, it was neither conceded nor conclusively proved that its use was limited to those not of a syphilitic nature.

The argument presented to the consideration of the jury a fact material upon the main issue in the case, which they could not properly consider. The fact was permitted to remain before the jury against the defendants' objection and subject to their exception. No attempt was made to cure the error which as matter of law rendered the trial unfair. The verdict therefore must be set aside.

*New trial granted.*

All concurred.