Cheshire,
Oct. 6, 1914.

## STATE v. JOHN H. WREN.

Oral testimony is admissible to prove the contents of a writing if the original is not at the time of the trial under the control of the witness or within the jurisdiction of the court.

Where oral testimony is offered for the purpose of proving the contents of a writing, the facts which excuse non-production of the original are to be found by the trial court in ruling upon the admissibility of the secondary proof; and evidence which tends to a contrary conclusion cannot first be suggested in the supreme court.

Upon the trial of an indictment for murder, the exclusion of evidence of a prior assault upon the victim, on the ground of remoteness in point of time, presents no question of law.

Upon the trial of an indictment for murder, the fact that a witness attempted suicide when summoned to testify was properly excluded on the ground of remoteness, in the absence of any evidence connecting him with the crime charged against the respondent.

An accidental misstatement of the evidence by counsel in argument does not render a trial unfair as matter of law, and when found by the trial court to be harmless, is not cause for setting aside a verdict.

Where testimony introduced for the sole purpose of contradicting a witness is treated in argument as affirmative proof, the error is cured by explicit instructions limiting the use of the evidence and an express finding that the jury were not misled.

Where the superior court has denied a motion for a second trial on the ground of newly discovered evidence, and has found that no injustice was done by the verdict and that no different result would probably be reached if such motion were granted, the jurisdiction of the supreme court is limited to the question of law whether there was evidence upon which the decision could reasonably be made.

BILL OF EXCEPTIONS, allowed by *Pike* and *Chamberlin*, JJ., at the April term, 1913, of the superior court, after a verdict of guilty in the first degree upon an indictment charging the murder of John Stewart Hamilton at Hinsdale, on February 5, 1913.

The state's evidence tended to show opportunity, robbery, flight on February 6 to Halifax, Nova Scotia, and the finding of a registered letter receipt issued to Hamilton on January 7, 1913, in the chimney of a house occupied by the defendant up to the time of his flight. The defendant excepted to rulings admitting and excluding evidence, to statements of the attorney-general in argu-

ment, and to the refusal of the court to grant a new trial because of evidence discovered since the trial. Upon the application for a new trial, the court found that it was not probable injustice had been done, or that upon another trial with the newly discovered evidence a different verdict would be returned.

*James P. Tuttle,* attorney-general, and *Orville E. Cain,* solicitor (by brief and orally), for the state.

*Benton & Pickard* and *Joseph Madden* (*Mr. Pickard* and *Mr. Madden* orally), for the defendant.

PARSONS, C. J. The exceptions to evidence are to the admission of the testimony of the witness, Dickson, that the defendant, Wren, signed the name "O. Moland" to a certain document, and to the evidence of Mrs. Dompier of a statement made by the defendant's wife. The defendant also excepted to the exclusion of evidence of an assualt upon Hamilton by other parties, and that one W C. Adams, when summoned as a witness by him, attempted to commit suicide.

1. "It is a sufficient answer to the objection against admitting secondary evidence of the existence and contents of the . . . writing that the original was shown to be beyond the jurisdiction of the court. *Burnham* v. *Wood,* 8 N. H. 334; *Little* v. *Paddleford,* 13 N. H. 167; *Woods* v. *Banks,* 14 N. H. 101; *Lord* v. *Staples,* 23 N. H. 448; *Beattie* v. *Hilliard,* 55 N. H. 428." *Ladd,* J., in *Carpenter* v. *Bailey,* 56 N. H. 283, 286.

If the testimony of the witness, Dickson, that the defendant, Wren, signed the name "O. Moland" to the manifest for the shipment of his trunk to Nova Scotia is within the objection excluding oral testimony to the contents of a written document, the statement of the witness that the manifest was attached to the trunk and sent with it to Nova Scotia was evidence tending to show that the document was not at the time of the trial under the control of the witness or within the jurisdiction of the court. What the fact was, was a question for the trial court, to be determined at the trial. *Beattie* v. *Hilliard,* 55 N. H. 428, 435. It is too late now for the defendant to suggest evidence tending to a contrary conclusion which was not then called to the attention of the court.

2. The defendant's financial condition prior to the murder was in controversy. The defendant's wife testified by deposition in

behalf of the defendant; and the fact of her having borrowed
two dollars of a Mrs. Dompier having appeared, she was asked by
the defendant's counsel "Did you tell Mrs. Dompier when you
borrowed this money [referring to the two dollars] that you were
hard up, or that you did not have a cent in the house?" to which
she answered "No, I don't remember telling her that." In rebuttal,
Mrs. Dompier was called· by the state and permitted to testify,
subject to exception, that Mrs. Wren made such statement. The
court instructed the jury that the witness' testimony was not
to be taken as affirmative evidence that Mrs. Wren in fact did not
have a cent in the house, that they must not consider it for such a
purpose, and that it was only introduced to affect or discredit Mrs.
Wren's testimony by showing that she had made a contradictory
statement as to this matter. No exception was taken to the use
of the evidence so limited. It is therefore unnecessary to consider
at this time whether, evidence being admitted of the borrowing
of two dollars at a certain time by the defendant's wife, it was or
was not competent to show what she said at the time explaining
the occasion for such loan.

3. Hamilton was in charge of workmen engaged in railroad con-
struction. The defendant inquired of a witness upon cross-examina-
tion as to an assault upon Hamilton by some of the workmen.
No evidence was offered as to the time of the alleged assault. The
court excluded the evidence as too remote, remarking that if evi-
dence were offered that the alleged assault was committed near
enough to the time of the alleged murder to have any connection
with it, or was so connected with it as to bear any relation to it,
the evidence would be admitted. The exception to this ruling
presents no question of law. The question of remoteness is for
the trial court. The ruling, in effect, was one admitting the evi-
dence if shown to have any connection in time or effect with the
issue tried. In the absence of any evidence of the date of the
alleged assault, that such assault had any bearing upon the issue
tried does not conclusively appear.

4. Upon the same ground the court excluded evidence that a
witness summoned by the defendant attempted suicide at the time
he was directed to appear in court. The defendant, being charged
with opportunity to commit the crime, might answer by show-
ing opportunity in others. Such fact appearing, evidence tending
to prove guilt in any one having opportunity was competent. The
defendant could prove his innocence by showing guilt in another

inconsistent with his own participation in the crime. Although the witness, Adams, attempted suicide when summoned to testify, the bill of exceptions does not present any evidence connecting him with the crime, other than that he lived in a house near the place where the body was found. Without some evidence connecting the witness with the crime, it cannot be said as matter of law that the conclusion of the trial court that the evidence was too remote to aid the jury was erroneous. The suicidal act is described in the defendant's brief as unexplainable. This would seem to be so upon the evidence here; and if unexplainable, evidence of the act could have served only to confuse the jury, and it was therefore properly excluded.

Other exceptions appear in the record which have not been insisted upon in argument. They have been examined, but as they all relate to matters within the control of the trial court in the course of the trial and are not subject to exception, it is unnecessary to discuss them.

5. The remaining exceptions taken at the trial rest upon objections to the argument of the attorney-general. Four stand upon the claim that the argument misstated the evidence. The statement that Wren's employer had to pay a milk bill is supported by evidence that Wren was slow in paying his bills and that in one instance his employer paid a milk bill for him; the statement that a witness saw Wren "disappearing in the darkness, the dusk, . . . going toward Liscom cut," is supported by evidence, as is also the argument from Wren's possession of the overcoat for a time after the killing. As to the last exception taken, it appeared that in the argument testimony was ascribed to one witness which was in fact given by another. While a verdict may be set aside for the introduction in argument of facts not contained in the evidence, and a persistent misstatement of the evidence may amount to such introduction so as to render the trial unfair, a mere misrecollection or accidental misstatement of the evidence does not render the trial unfair as matter of law. The jury were cautioned by counsel and the court to rely upon their own recollection as to the testimony of witnesses and not upon the statements of counsel. The departures from verbal accuracy in the recital of the evidence were trifling; and the trial court having found the errors harmless in fact, there is no ground upon which the trial can be held unfair because of them, as matter of law. *Burnham* v. *Stillings*, 76 N. H. 122, 129, 130.

The remaining exception to the argument is to the use made therein of the testimony of Mrs. Dompier, introduced to contradict Mrs. Wren in her denial that she had stated they had not a cent in the house. It is contended that this testimony was relied upon as affirmative evidence tending to prove that fact. If such is a fair construction of the argument and such use of the testimony was improper, the error was cured by the explicit instructions of the court that the evidence could be used only to discredit Mrs. Wren as a witness and the express finding that the jury were not misled. The case was not permitted to go to the jury upon the erroneous contention, if error there was, but the error was cured before the case was submitted. "The material fact which saves the verdict is the finding that the error was cured and the trial fair." *Burnham* v. *Stillings*, 76 N. H. 122, 130. The disposition of the point upon this ground is not to be understood as a holding that it was necessary to limit the effect of Mrs. Dompier's evidence as it was limited, or that the attorney-general attempted an improper use of it. The defendant introduced the fact of the loan and statement or non-statement made by his wife at the time. The fact of the loan and the wife's verbal act in reference to it being considered competent by the defendant, he could not object to evidence upon the issue raised by himself. The act of borrowing by the wife being competent, it is difficult to see upon what ground her statement at the time explaining or characterizing the act could be excluded. If the fact that she, as the agent, servant, or joint partner of her husband in the conduct of the household, borrowed two dollars became for any reason competent, her declarations accompanying the act would seem to be admissible. *Sprague* v. *Bristol*, 63 N. H. 430. But the evidence was not admitted as affirmative proof, and it is expressly found was not so used. It is therefore useless to attempt to decide whether it might not have been properly so offered and used.

6. After verdict the defendant moved for a new trial because of newly discovered evidence. "'A new trial may be granted in any case where a review may not be had of right, when justice has not been done, through accident, mistake, or misfortune, and a further hearing would be equitable.' G. L., c. 234, s. 1. Some of the provisions of this chapter may not be applicable to criminal cases; and the whole chapter was probably intended for civil cases only. But the ground on which it allows a new trial may properly be adopted as a general rule of procedure on petition for new

trial after judgment in criminal cases. . . . Elementary prin-
ciples and immemorial practice require such judicial control, regu-
lation, and improvement of common-law remedies and methods of
procedure as experience shows to be necessary for the easy ascer-
tainment and protection of legal rights. 3 Bl. Com. 389–393.
A convict is entitled to a new trial when it appears that by accident,
mistake, or misfortune justice has not been done, and that a further
hearing is equitable." *Buzzell* v. *State*, 59 N. H. 61.

The justices presiding at the trial heard the motion upon affi-
davits and, upon considering the same in connection with the
evidence adduced at the trial, found that it was not probable
injustice had been done by the verdict, or that upon another trial,
with the alleged newly discovered evidence, a different verdict
would be returned, and denied the motion. As it did not appear
that injustice had been done, or that a new trial would be equitable,
the denial of the motion for such trial necessarily followed as matter
of law. *Buzzell* v. *State, supra*. In the case last cited the petition
was presented at the trial term and all questions of fact and law
were reserved. It is said in the opinion: "Ordinarily, a question
of fact, like that raised in this case, is not decided at the law term.
*Brooks* v. *Howard*, 58 N. H. 91. But the rule has been waived
in favor of the convict, on his petition in this capital case."

While at one time the law court did consider questions of fact
arising in the course of trials when specially reserved, at no time did
the court attempt to pass upon questions of fact which were not
so reserved; and in view of the purpose of the act of 1901, separating
the court of law from the court of fact, it has been held in a recent
case that this court has not power to pass upon such questions
even when reserved. It was then said: "The judicial system as
now established requires that questions of fact arising in the course
of trials in the superior court shall be there decided, and the juris-
diction of the supreme court is thereby limited to the question of
law, whether there was evidence upon which the decision could
reasonably be made as it was made." *Nawn* v. *Railroad, ante*,
299. Whether an exception could be made in favor of life in a
capital case, as was made in *Buzzell* v. *State*, need not be considered
for two reasons: (1) The superior court have not attempted to
transfer the decision of the questions of fact raised by the petition
to this court, and (2) this is not now a capital case. The defendant
is in no danger of losing his life as a punishment for this crime so

long as the present verdict stands. The defendant takes nothing by his exception to the denial of his petition for a new trial.

The defendant moved that his "appeal and bill of exceptions to the refusal of his motion for a new trial, . . . and the evidence and facts, . . . be transferred to the supreme court for the determination of the question whether the refusal of said motion is in accordance with a reasonable and sound discretion." This was, in effect, an attempt to transfer to this court the decision of the question of fact already passed upon, and the court properly denied his motion to print the whole record and all the evidence adduced at the trial, upon the ground that no appeal lies to retry the facts.

In oral argument, the defendant's counsel made the claim that the conclusions of the trial court upon the questions of fact involved in the motion for a new trial were against the weight of the evidence. The verdict of a jury or the conclusions of a referee can only be set aside on this ground where it conclusively appears that the trier of fact unwittingly fell into a plain mistake, or that the verdict was produced by passion, partiality, or corruption. The same rule applies when a finding of fact made by the presiding judge in the course of the trial is attacked as against the evidence. *Colburn* v. *Groton*, 66 N. H. 151, 153, 154; *Norris* v. *Clark*, 72 N. H. 442, 444; *Jaques* v. *Chandler*, 73 N. H. 376, 382; *Twombly* v. *Lord*, 74 N. H. 211, 212; *Green* v. *Merrill*, 76 N. H. 50, 51.

It cannot be said that the court unwittingly fell into a plain mistake in finding that injustice had not been done and that the result would not be changed upon another trial by the newly discovered evidence, unless it conclusively appeared from the new evidence that the former verdict was erroneous. Such conclusion does not follow from the new evidence. It attacks only one branch of the state's·case: the alleged finding upon the premises occupied by the defendant up to the time of his flight, of a paper formerly in Hamilton's possession. Assuming the truth of the newly discovered evidence and conceding it destroyed all the inferences sought to be drawn by the state from the finding of the registered letter receipt issued to Hamilton on January 7, 1913, upon the premises occupied by Wren, there remained abundant evidence of Wren's guilt, in his opportunity, motive, flight, and the blood upon his clothing. Whether the destruction of one phase of the state's case, in connection with all the other evidence, rendered it probable injustice had been done and required another trial

was a question of fact upon which the most favorable view for the defendant would be that reasonable men might entertain different views. Stating the case most favorably for the defendant, it may also be said that triers of the fact might possibly entertain different views as to the value of the newly discovered evidence and the probability that a jury would regard it as worthy of consideration.

But the conclusion that a different view of the fact might be taken from what was taken, if such conclusion could reasonably be entertained, does not aid the defendant. The question of fact upon which his right to a new trial depends has been submitted to the tribunal having jurisdiction of the fact without appeal, and has been fully and fairly heard without error of law correctible by this court. That conclusion must stand because made by the court of last resort.

*Exceptions overruled.*

WALKER, J., dissented as to the exclusion of evidence of assault upon Hamilton: PLUMMER, J., was absent: the others concurred.