Rockingham
No. 82-010

THE STATE OF NEW HAMPSHIRE

v.

RAYMOND E. GLIDDEN

March 24, 1983

128

*Gregory H. Smith*, attorney general (*Brian T. Tucker*, assistant attorney general, on the brief and orally), for the State.

*McLaughlin & Berrigan*, of Nashua (*Shane A. McLaughlin* on the brief and orally), for the defendant.

PER CURIAM. In this accomplice-to-first-degree-murder case, we consider multiple issues including the validity of the indictment, the admission of certain evidence, objections to the instructions to the jury, the sufficiency of the evidence, and the failure to grant a mistrial. We affirm the defendant's conviction.

The defendant, Raymond E. Glidden, was indicted for acting as an accomplice to Freddy Comtois in the first-degree murder of Steven Mitchell, *see* RSA 630:1-a; RSA 626:8, III(a), in that he

> "did, with the purpose of facilitating the first degree murder . . . , aid Comtois in committing the said murder by driving with him to the Mozdzen residence . . . and by knocking on several apartment doors in an attempt to locate Mitchell. After Comtois shot Mitchell approximately five (5) times in Glidden's presence, Glidden drove with Comtois away from the scene. Glidden performed all of the above actions with the purpose of causing the death of Steven Mitchell . . . ."

A jury trial in Superior Court (*Nadeau*, J.) resulted in a guilty verdict, and the defendant appealed.

Evidence admitted at trial established the following facts. In the early morning of April 30, 1980, Steven Mitchell was shot five times in the driveway of his residence. The wounds, which proved to be fatal, were to his shoulder, arm, back, neck, and ear. Two .45 caliber casings found at the scene were determined to have been fired from the same gun as casings found at a target-shooting area used by Freddy Comtois to fire his .45 caliber revolver.

A few days before the shooting, Comtois was told that Mitchell had revealed that Comtois and others were planning a robbery. Comtois remarked that he was "getting real sick of him [Mitchell] and he was going to shut him up." In addition, some time before the killing, Dick Decato offered Comtois $1,000 to put Mitchell in the hospital because Mitchell had "ripped Decato off" earlier.

On the night of April 29, 1980, a person meeting the description of the defendant came to the home of David Mozdzen looking for Mitchell. Mitchell lived at the Mozdzen residence. Mozdzen could not say for sure, however, whether it was the defendant. Later that same night, at about 2:30 a.m. on April 30, Lorraine Mozdzen heard four gunshots and saw a car speed off. Thomas Puchacz, who was parked nearby with his girlfriend, stated that he heard six gunshots about 2:35 a.m. David Mozdzen testified that when he looked out his bedroom window after hearing shots fired, he saw Comtois standing by the open door on the passenger side of a dark car, and that he then walked around the front of the car, got in on the driver's side,

and drove off. Mitchell was found at the foot of the Mozdzen's driveway at 3:40 a.m.

That same morning, Comtois arrived at the Sky Ray Motel where Alan Marceau and Ron Ballam were staying. When Marceau opened the door to let Comtois in, he saw the defendant inside a Camaro Z28. Comtois handed Marceau $1,000 to count. When Ballam, who was not in the motel room when Comtois arrived, returned to the motel, Comtois said he had just finished "blowing Steve Mitchell away."

Comtois asked if he had any blood on his clothes, but was told there was none. Comtois asked Ballam to burn his clothes and to check Mitchell's body to determine if he was dead. Ballam later testified that although he told Comtois that he had checked the body, he actually had not done so.

After dropping Comtois at the motel, the defendant went to the home of a friend and asked if he could park the car he was driving in front of a truck in the driveway because he did not want anyone to see the car. He showed his friend a .45 caliber handgun and said the gun was "warm" or "no good." Comtois arrived ten minutes later and told the defendant he could keep that gun as a "souvenir." The defendant gave the gun to his friend, who threw it into the river the next day. It was never found.

Upon leaving the friend's home, the defendant told Ballam that he had agreed to kill Mitchell as a favor to Comtois and that because his fingers were scarred he would not leave fingerprints. The defendant also told Ballam that he had knocked on a door at the Mozdzen residence earlier that night looking for Mitchell, that he was there when Mitchell was shot, and that he had to tell Comtois to stop shooting.

Rodney Gray testified that in the early summer of 1980 in Maine, the defendant told him that he and a man named Freddy had killed someone in New Hampshire. According to Gray's testimony, the defendant said that he intended to do the shooting, but when the gun failed to fire Freddy grabbed it and shot the victim with a .45 automatic. He said that the defendant showed him a bullet which he said was the one that failed to go off. The defendant was apprehended in Florida with Comtois in May 1981.

The defendant argues that the indictment should be read as charging him as an accomplice to second-degree, rather than first-degree, murder because it does not allege malice aforethought or premeditation and deliberation. The indictment does allege, however, that he did certain acts *"with the purpose of facilitating the first degree murder of Steven Mitchell"* (emphasis added), and that

he performed the ·specified acts *"with the purpose* of causing the death of Steven Mitchell." (Emphasis added.)

When the new Criminal Code became effective in 1973, murder was redefined, thereby eliminating the requirement that premeditation and deliberation be specifically alleged. The defendant's reliance on *State v. Conklin,* 115 N.H. 331, 334, 341 A.2d 770, 773 (1975), for the proposition that the State is required to make such a specific allegation, therefore, is misplaced. In *State v. Bussiere,* 118 N.H. 659, 662–63, 392 A.2d 151, 154 (1978), this court upheld an accomplice-to-attempted-murder indictment with substantially the same wording as the one in this case.

■ Furthermore, RSA 630:1-a, II defines "purposely" in the context of the first-degree-murder statute to mean "that the actor's conscious object is the death of another, and that his act or acts in furtherance of that object were deliberate and premeditated." The word "purposely" as defined in RSA 630:1-a, II satisfies the common-law "malice aforethought" requirement in a first-degree-murder indictment. *State v. Conklin,* 115 N.H. at 334, 341 A.2d at 773. The indictment therefore satisfied even the more rigid requirements of former RSA 601:6 before it was amended to require only that "the culpable mental state applicable" be charged. RSA 601:6 (Supp. 1981).

■ The defendant argues that evidence that he fired or attempted to fire shots at Mitchell should not have been admitted because he was charged as an accomplice, and because the indictment charged him only with driving with the principal to the scene of the crime and knocking on some doors in an effort to find Mitchell, and with leaving the scene with the principal. The defendant filed a pretrial motion seeking a ruling that this evidence should be excluded. The trial court ruled it was relevant to the question of the defendant's premeditation and deliberation and facilitation of the crime, and that it was admissible unless excluded on another ground. No exception was taken to the pretrial ruling, and no objection was made when the evidence was introduced at the trial. The defendant has therefore failed to preserve the issue for appeal. *State v. Dukette,* 122 N.H. 336, 338, 444 A.2d 547, 549 (1982); *State v. Cass,* 121 N.H. 81, 82, 427 A.2d 1, 2 (1981).

■ Moreover, the evidence was admissible because it was relevant to the purpose of the defendant's presence at the scene of the crime and as to his intent. The fact that it may have been evidence of a different crime does not make it inadmissible. *State v. Hardy,* 120 N.H. 552, 554, 419 A.2d 398, 400 (1980).

██ The defendant further argues that certain out-of-court statements were inadmissible either to prove the guilt of Comtois or to prove the defendant's guilt or involvement, because they were hearsay. The testimony of Marceau that he heard Decato offer Comtois $1,000 to put Mitchell in the hospital was not hearsay and was clearly admissible. The testimony of Ballam that Comtois told him that Decato offered him around $1,000 to beat up Mitchell would have been hearsay if introduced to prove that offer, but was admissible to prove Comtois' intent in shooting Mitchell.

██ The court ruled before trial that these out-of-court statements did not violate the rule of *Bruton v. United States*, 391 U.S. 123, 136–37 (1968), which is applicable in State prosecutions, *Roberts v. Russell*, 392 U.S. 293, 294 (1968), that the admission at a joint trial of a defendant's extra-judicial confession implicating a co-defendant violates the co-defendant's sixth-amendment right of confrontation. The trial court determined that these out-of-court statements would be admitted "if otherwise admissible," and left the question "open to permit them once again to be raised at trial . . . ." No objection to the admission of this evidence was made at trial and therefore the issue of whether this evidence should have been admitted is not before us on appeal. *State v. Perkins*, 121 N.H. 713, 717, 435 A.2d 504, 506 (1981). Evidence of the $1,000 offer had already been properly admitted in the testimony of Marceau. Thus, even if the admission of this evidence was erroneous, it would have been harmless. *See Schneble v. Florida*, 405 U.S. 427, 432 (1972).

█ The defendant contends that the trial court erred in admitting the testimony of Ballam that Comtois said "he was going to have a talk with him [Mitchell] to tell him to keep his mouth shut," on the ground that this was inadmissible hearsay. Not only did the defendant fail to object or except to this evidence, but in any event, this was evidence of Comtois' state of mind and thus not hearsay.

█ The defendant next contends that certain statements or acts by him after the time of the shooting were irrelevant and thus not properly admissible. The court ruled before trial that the defendant's statements to Ballam that he went to the Mozdzen residence with Comtois to look for Mitchell intending to kill him, that he helped look for Mitchell, and that he was present when Comtois shot Mitchell, were all admissible. Although these statements were made after the shooting, they were properly admitted as admissions of what occurred before and at the time of the shooting. *See State v. Jansen*, 120 N.H. 616, 617–18, 419 A.2d 1108, 1109–10 (1980).

■ The trial court reserved ruling on the admissibility of evidence that the defendant was in possession of a .45 caliber revolver after the shooting and that he tried to hide his car behind a truck in the driveway of a friend. No exception was taken at trial to the introduction of the evidence regarding these issues, and the defendant has therefore waived his right to appeal. *State v. Glidden*, 122 N.H. 41, 48, 441 A.2d 728, 732 (1982); *State v. Wonyetye*, 122 N.H. 39, 40, 441 A.2d 363, 364 (1982).

■ The defendant challenges the trial court's admission of evidence that he fled from the State after the shooting. Evidence of the defendant's flight was clearly admissible to show consciousness of guilt. *State v. Barry*, 93 N.H. 10, 13, 34 A.2d 661, 663 (1943). Moreover, the trial court instructed the jury that evidence of the defendant's conduct after the shooting could not constitute the criminal conduct of assisting in the killing, and that the defendant's guilt must be based upon "what . . . [he] did before and at the time of the shooting." The instruction prevented any opportunity for misunderstanding.

■■ It was not necessary that the State prove the defendant was aware that he was suspected of a crime before evidence of his flight could be admitted. *See State v. Nemeth*, 438 A.2d 120, 123 (Conn. 1980). Although ignorance of the charge may serve to refute the implications of his flight, 2 WIGMORE ON EVIDENCE § 276, at 129 (Chadbourn rev. 1979), the defendant cites no authority for requiring the prosecution to prove knowledge, and we have found none. Moreover, after being interviewed by the State Police about Mitchell's death, not only did the defendant flee the State, but when he was found about ten months later in Florida with Comtois, they both attempted to flee and were apprehended only after a high-speed chase. It could be found that the defendant knew he was wanted in connection with the shooting.

■ Contrary to the defendant's contention, the court did not err in declining to instruct the jury that the defendant may demonstrate his innocence by showing the motive or opportunity of others to commit the offense charged. *State v. Wren*, 77 N.H. 361, 363, 92 A. 170, 172 (1914), does not require such a charge in this case. In *Wren*, the defendant was charged with murder; proof that someone else committed the crime would have exonerated the defendant. But here, the defendant is charged as an accomplice to murder. Since there can be more than one accomplice, the *Wren* principle does not apply. Evidence that others were involved or had a motive to be involved would still leave open the question whether the defendant

was also involved. *See State v. Jansen*, 120 N.H. at 619, 419 A.2d at 1110 (accomplice liability requires proof that the criminal conduct of principal occurred *and* that defendant aided in that criminal conduct).

██ ██ The defendant's contention that a new trial should be granted, because the court erred in not instructing the jury that it could consider his absence of motive, has no merit. Although absence of apparent motive may be a factor in favor of the accused, *see State v. Palmer*, 65 N.H. 216, 218, 20 A. 6, 7 (1889), the failure to so instruct is not necessarily a ground for a new trial. Here, there was evidence of motive based on the defendant's statement to Ballam that he agreed to kill Mitchell as a favor to Comtois. Moreover, the defendant was free to argue lack of motive even in the absence of an instruction, and the absence of an instruction does not require a new trial in this case. *See State v. Dickson*, 596 S.W.2d 482, 485 (Mo. App. 1980).

██ It was not error for the trial court to decline to instruct the jury that any evidence tending to prove that someone else might have participated in the commission of the crime was relevant on the existence of a reasonable doubt. This issue has previously been discussed in a different form; *State v. Wren* does not support the defendant's position on this point. The trial court in this case instructed the jury by using the model charge on reasonable doubt that was set forth in *State v. Wentworth*, 118 N.H. 832, 838–39, 395 A.2d 858, 862–63 (1978), and no more was required.

██ The court properly refused to direct a verdict of acquittal for the defendant. Construing all the evidence most favorably to the prosecution, we cannot say that no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Burke*, 122 N.H. 565, 572, 448 A.2d 962, 966 (1982). Testimony regarding the defendant's own statements, his presence in Comtois' car immediately after the shooting, the description of the person who came looking for Mitchell as resembling the defendant, and his attempt to fire the murder weapon, combined to make the evidence sufficient to support the guilty verdict.

The defendant's final contention is that the court should have granted a mistrial based on the admission of certain ballistics evidence. Roger Klose, a firearms identification expert for the State Police, testified that he examined an undischarged .45 caliber cartridge which was delivered to him by State Police Detective Young. He was unable to determine that it had been chambered in the same

gun as the casings found at the murder scene, but he did testify that because of certain marks on the casing, he was of the opinion that it, had been chambered in a .45 caliber revolver and had been ejected after an attempt to fire it. On cross-examination, it was established that Klose had taken notes on his observation but did not photograph or measure the bullet; instead, he returned it to Young. The State offered to prove that the bullet was given to Rodney Gray by the defendant and that Gray had given it to Young, who returned it to Gray.

■ The defendant moved for a mistrial or, in the alternative, to strike Klose's testimony and to instruct the jury to disregard it. The motion was based on the unavailability of the bullet for the defendant's inspection. The trial court had broad discretion to determine whether the trial should continue, *State v. Arthur*, 118 N.H. 561, 564, 391 A.2d 884, 886 (1978), and we cannot say that he abused his discretion based on the record before us. The court struck the testimony and instructed the jury to disregard it. The defendant did not question the wording of the instruction to disregard Klose's testimony regarding the .45 caliber casing, which was sufficient to prevent any possible prejudice, and the jury is presumed to have followed the instruction. *State v. Preston*, 121 N.H. 147, 150, 427 A.2d 32, 34 (1981); *State v. Novosel*, 120 N.H. 176, 186, 412 A.2d 739, 746 (1980).

■■ After the jury had deliberated for about two days, the court received a note stating that "we have 10 guilty, 2 not guilty. Could you give us some help?" After denial of the defendant's motion for a mistrial, the court instructed the jury in accordance with section 15-4.4 of the American Bar Association STANDARDS FOR CRIMINAL JUSTICE, *Trial by Jury*, at 15-133 (2d ed. 1980) (volume 3); *see State v. Niquette*, 122 N.H. 870, 873–74, 451 A.2d 1292, 1294 (1982); *State v. Blake*, 113 N.H. 115, 124, 305 A.2d 300, 306 (1973). After further deliberating about an hour, the jury returned a guilty verdict. There is no *per se* rule to determine how long is too long for a jury to deliberate; it is a matter within the sound discretion of the trial court. We find no abuse of discretion in this case.

*Affirmed.*