CLAYTON B. MONROE *v.* ARTHUR STERLING.

*Rolland R. Rasquin* (by brief and orally), for the plaintiff.

*John H. Sanders, William N. Rogers, Richard F. Upton (Mr. Upton* orally), for the defendant.

BURQUE, J. The accident happened at 7:30 P.M. It was dark. Automobiles had lights on. Plaintiff and his uncle were walking in a southerly direction, and on the westerly side of the road (either on or off the tarvia), which was about twenty-two and one half feet wide in that locality. Defendant was also operating his car in a southerly direction, and in the rear of plaintiff and his uncle. He had his dimmers on. A car was coming in the opposite direction, with bright lights on, at least one hundred feet away from the point of contact. There was a sand shoulder west of the road, averaging from three to six feet in width. Both men were close to one another, at times rubbing elbows and shoulders, and plaintiff was to the east of his uncle. Plaintiff's claim is that he was on the shoulder within three or four inches of the westerly edge of the road when he was struck. Plaintiff does not know how the accident happened. His uncle, however, testified that plaintiff was struck by the defendant's car and fell in front of him. This uncle testifies that defendant's car was on the tarvia, and never left it after the

accident. There is no evidence in the case from which it can be found defendant's car was off the tarvia before the accident.

The car door hinges extend out from the side of the car one and five eighths to two inches. The upper hinge, the one which came in contact with the plaintiff, is approximately four feet eight and six eighths inches from the ground. The running board extends out four and three fourths inches beyond the hinges, the running board itself being ten inches wide, and is one foot two and three fourths inches from the ground. The car overall is five feet eight inches wide.

If plaintiff's version of the accident is true, it is impossible to see how plaintiff could have been struck in the back of the head, without being hit on any other part of his body by any other part of the car except the hinge of the door on the right-hand side of the car (a fact which must be conceded). The accident must have happened as defendant's grandfather says it did. The latter was riding with the defendant, and to his right in the front seat. His testimony is to the effect that plaintiff at least (if not both men), was on the tarvia; that as defendant's car came within ten feet of these two men, and swerved sharply to the left, plaintiff's hands went up, and he fell backward and downward, thus coming in contact with the top hinge of the right-hand door of the car. Defendant's car was within two or three feet east of the westerly edge of the tarvia, just before swerving to the left. If this is the true version of the accident, the conclusion is inevitable that there is nothing in the case indicating causal negligence on the defendant's part. Nothing is suggested or advanced in written or oral argument that could charge the defendant with causal fault in the situation disclosed by the evidence.

*Judgment for defendant.*

ALLEN, C. J., was absent: the others concurred.

ON REHEARING. After the foregoing opinion was filed, plaintiff moved for a rehearing. The motion was granted.

*Rolland R. Rasquin* and *Cooper, Hall & Grimes* (*Mr. Rasquin* orally), for the motion.

*Richard F. Upton, Robert W. Upton, William N. Rogers, John H. Sanders* (*Mr. Richard F. Upton* orally), opposed.

BURQUE, J.   A majority of the court are now of the opinion that there was evidence of causal negligence on the part of the defendant in that it can be found he was negligent in not seeing the plaintiff in time to avoid the accident, and in driving at the speed he did when, as he claims, he was blinded by the lights of an oncoming car, *Fine* v. *Parella, post,* 81.   A majority are also of opinion that it is findable that the defendant, driving as close to the plaintiff as it necessarily appears he must have, produced instinctive action on the part of the plaintiff, due to sudden realization of impending danger, bringing about plaintiff's contact with the defendant's car, thus resulting in the defendant's negligence being causal.

There being two divergent claims as to where the plaintiff was walking, to wit, whether off or too much on the road, the question of contributory negligence is for the jury.

After the evidence was closed, and before arguments, a conference was had between the court and counsel, at which time the court ruled there was no evidence of permanent injury.   Counsel concurred in this, and it was agreed damages for permanent injury would not be argued.   In contravention of this plaintiff's counsel, in the course of his argument, and while discussing damages, informed the jury he would read to them Dr. Shedd's testimony so that they "may be able to determine how much . . . should be added . . . for what he [the plaintiff] has passed through and for what he may pass through in the future."   Upon objection plaintiff's counsel was asked by the court, and at the bench, what he meant by "future," and his reply was: "Whether that future be one month, six months, or a number of years."   Upon further objection this last remark was withdrawn, and another remark was substituted which amounted to the same thing, and upon objection, this was likewise withdrawn.   Then counsel addressed the jury as follows:

"I am not going to say one more word except to ask you to award this boy damages in addition to what I have already said for whatever his injuries may be as revealed to you by the testimony of Dr. Harold Shedd . . . I read this testimony . . . for the purpose of enabling you gentlemen to formulate an adequate and proper and compensatory amount for this boy for whatever is revealed by the testimony of Dr. Harold Shedd."   Defendant's attorneys objected on two grounds.   First, the testimony was incompetent; second, it was a violation of the law of the trial.   The court, without overruling the objections, allowed plaintiff to go on, and saved the

defendant an exception. The doctor testified, after saying he would not "give any statement as to the probability of the permanency of the brain injury," that "I don't wish to take the stand that there is any definite probability as to this thing. It would be perfectly consistent with an injury of this sort that he might be impaired for years, possibly for life," and counsel added: "I leave that with you. . . . I am only relying on your minds to remember in the jury room what Dr. Shedd said on the stand; that's all, so that you may weigh and judge this boy's injuries." This certainly was argument that the jury could find injury "possibly for life," which can mean nothing else than "permanent injury." The evidence was incompetent; it is based on possibility and not probability. *L'Esperance* v. *Sherburne*, 85 N. H. 103, 110; *Ernshaw* v. *Roberge*, 86 N. H. 451, 454. Even though the evidence was in the case it remained incompetent, and argument based thereon should not, upon objection, have been allowed. *Burnham* v. *Stillings*, 76 N. H. 122, 128.

Further the argument violated the law of the trial. It having been agreed there was no evidence of "permanent injury," and that the point would not be argued, calling the jury's attention to incompetent testimony that plaintiff "might be impaired for years, possibly for life," was incorporating the testimony as part of the argument, and was just as effective as if argued without reading the evidence. This was error sufficient to reverse and set aside the verdict.

But plaintiff claims the error, if any, was cured by the judge's charge to the jury. A majority of the court cannot subscribe to this. The charge, as it relates to the point in issue, is as follows: "The pain and suffering that is referred to is what he has suffered in the past and is suffering up to the present time. There is no evidence that the plaintiff suffered a permanent injury and you cannot award damages to the plaintiff upon that element." A majority are of the opinion that it cannot be held to have effectively removed from the jury's minds the fact that it was claimed plaintiff might be impaired "possibly for life." The jury should have been told specifically there was no competent evidence to sustain a finding of probable impairment for life, and that the evidence to that effect should be absolutely disregarded.

The verdict must be set aside.

*New trial.*

16

PAGE and BURQUE, J.J., are of the opinion that the defendant is entitled to judgment:

BRANCH, J., dissents from the order sustaining the exception to argument upon the ground that the instructions of the court were sufficient to correct the error.