Belknap
No. 79-188

## THE STATE OF NEW HAMPSHIRE

v.

## MARK W. DONOVAN

September 17, 1980

*Gregory H. Smith*, acting attorney general (*Peter W. Mosseau*, attorney, orally), for the State.

*Roger B. Phillips*, of Concord, by brief and orally, for the defendant.

KING, J. This is an appeal from a jury verdict finding the defendant, Mark W. Donovan, guilty of tampering with a witness in violation of RSA 641:5.

The tampering charge arose from events which occurred while the defendant was awaiting trial on an assault charge filed in October 1978 by one Jack Vincent. On November 16, 1978, the defendant, his brother, and an acquaintance known at different times as "Wilfred", "Looney Tunes," or "Rock 'n Roll" Lamontagne confronted Vincent at Anthony's House of Pizza. When Vincent went to the men's room, he was followed by "Looney Tunes" and the defendant. Vincent testified the defendant then pushed him from the men's room into the lady's restroom. "Looney Tunes" produced a knife, and the defendant threatened Vincent that if he did not "smarten up," he would be "chop[ped] . . . in little pieces and flush[ed] . . . down the toilet."

The defendant duly excepted to the admission of certain evidence and instructions given by the Trial Court (*Batchelder*, J.) during the trial and on the second day of deliberations. Because the trial judge was unavailable when the jury returned its verdict, a substitute Judge (*Dunfey*, J.) was sitting.

The defendant first asserts that a substitute judge should not be permitted to rule on a motion to interrogate the jury after the verdict has been delivered. We disagree.

When a trial judge is unable to act by reason of absence, death, sickness, or other disability, a substitute judge is permitted

to rule on a variety of motions. *See, e.g., United States v. Teresi,* 484 F.2d 894 (7th Cir. 1973) (motion to reduce sentence); *Coleman v. United States,* 334 F.2d 558 (D.C. Cir. 1964) (motion to revoke or vacate sentence); *Connelly v. United States,* 249 F.2d 576 (8th Cir. 1957) (motion for new trial or judgment of acquittal). In the instant case, a substitute judge ruled on a motion to interrogate the jury after the verdict had been returned. We see no inherent danger in permitting a substitute judge to rule upon such a motion.

■ This State has consistently maintained a policy of leaving the decision to poll the jury to the discretion of the trial judge, who may exercise that option when justice so requires. *State v. Kenna,* 117 N.H. 305, 374 A.2d 427 (1977); *State v. Sturtevant,* 96 N.H. 99, 70 A.2d 909 (1950). "The discretion of the trial court in this respect is broad . . . and the denial of a motion to interrogate will not be overruled except for abuse of that discretion." *Bothwick v. LaBelle,* 115 N.H. 279, 281, 339 A.2d 29, 32 (1975).

After the request for individual jury poll in which all jurors responded that the defendant was guilty, counsel for the defendant requested the court to "poll the jury" to determine whether or not any of them "have discussed the subject matter since they were excused at 5:00 o'clock [the previous day], read anything about the case . . . or hear[d] anything from any other sources, either [about] the case or the defendant." The defendant's counsel told the court "that there is no basis factually, as such, it's just his unending concern, the defendant being a resident of the community, and the fact that the jury had the case yesterday afternoon and, as allowed by statute were permitted to go home." Both counsel agreed that the court gave the customary instructions required by law and the prosecutor advised the court that, to the best of his knowledge, there was absolutely no reference to the trial in the local newspaper. The court found "not a scintilla of evidence" to indicate that any of the jurors did not respect and "follow the admonitions under their respective oaths" and denied the request.

■ The defendant's counsel, although requesting a further "poll" of the jury, in effect, requested an interrogation of the jurors even when no semblance of grounds were demonstrated which would subject the jury's verdict to challenge prior to the interrogation. This is not a case where a miscarriage of justice will result if the jurors are not permitted to be interviewed or interrogated. Even assuming that a juror read a newspaper account about the trial during its progress, whether or not a new trial should be granted

in such an instance is a question for the trial judge to resolve in his discretion. *Marshall v. United States,* 360 U.S. 310, 312 (1959); *Booton v. Hanauer,* 541 F.2d 296 (1st Cir. 1976); C. TORCIA, 4 WHARTON'S CRIMINAL PROCEDURE § 570 (12th ed. 1976); *see* Annot., 15 A.L.R.2d 1152 (1951). The speculation or surmise of defendant's attorney, unsupported or uncorroborated either by sworn affidavit or statements of any party, that there was any impropriety, wrongdoing or violation of the oath of a juror affecting the verdict, does not require the trial court to examine or interrogate or interview the jurors after their verdict is revealed. A trial court's refusal to interrogate the jurors for possible error when a defendant requests it "merely for the purpose of providing him with 'insight and guidelines in evaluating his position on retrial' . . . is clearly not an abuse of discretion." *State v. Kenna, supra* at 310, 374 A.2d at 430. We therefore conclude that there was no abuse of discretion by the substitute judge when he refused to allow the additional interrogation of the jury.

Defendant next argues that the admission into evidence of certain testimony constituted an abuse of discretion by the trial judge. The testimony in question concerned an assault by the defendant upon one Stephen Loisel which occurred shortly after the defendant's confrontation with Jack Vincent. When called to the stand as a rebuttal witness by the State, Loisel testified that Donovan had assaulted him. The defendant argued that such evidence should have been excluded because it was evidence of an illegal act.

In general, "the proper function and purpose of rebuttal testimony is to explain, repel, counteract, or disprove the evidence of the adverse party." *United States v. Chrzanowski,* 502 F.2d 573 (3d Cir. 1974). The decision to admit evidence on rebuttal for the purpose of impeachment is within the discretion of the trial court, and the court's ruling will not be disturbed unless there has been a clear abuse of that discretion. *United States v. Walton,* 552 F.2d 1354 (10th Cir.), *cert. denied,* 431 U.S. 959 (1977); C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 466 (13th ed. 1972.) In the present case, the defendant testified on direct examination that following his confrontation with Jack Vincent, he had returned to his table and had "dr[u]nk a few beers . . . until the place closed." On cross-examination, he asserted that he had not kicked Stephen Loisel. Loisel was called to the stand to testify that the defendant did more than just drink a few beers after his altercation with Vincent, and that the defendant had indeed kicked Loisel. By choosing to testify, the defendant here "opened the door" for the

prosecution to present evidence which tended to impeach the credibility of his testimony. We therefore hold that there was no abuse of discretion by the trial judge.

The defendant next asserts it was error for the trial court to give certain instructions to the jury after the foreman had informed the court that the jurors were having difficulty in reaching a unanimous verdict. The record reveals that defense counsel neither objected nor excepted to the use of those instructions at trial.

■ This State's contemporaneous objection and exception rule · is firmly grounded in statutory authority, RSA 490:10, 491:17, and it has been consistently and routinely applied "especially with regard to jury instructions." *Martineau v. Perrin*, 119 N.H. 529, 531, 404 A.2d 1100, 1102 (1979). This rule has been recently reaffirmed, *State v. Josselin*, 119 N.H. 936, 409 A.2d 1336 (1979). We, therefore, will not consider this question on appeal.

Defendant next argues that the trial court erred in its instructions concerning the reasonable doubt standard. Defendant first contends that the cumulative effect of the trial court's reasonable doubt instruction closely approximates the instructions held invalid in *Dunn v. Perrin*, 570 F.2d 21 (1st Cir.), *cert. denied*, 437 U.S. 910 (1978). We feel that the defendant's reliance upon *Dunn* is misplaced.

■ In the instant case, the trial judge instructed the jury that reasonable doubt is "the kind of doubt that would make a reasonable person hesitate to act upon something of great importance to him." This "hesitate to act" language has received widespread approval and is generally deemed to be preferable to alternative phraseologies. *United States v. Magnano*, 543 F.2d 431, 436 (2d Cir. 1976), *cert. denied*, 429 U.S. 1091 (1977); *see Holland v. United States*, 348 U.S. 121, 140 (1954); *United States v. Robinson*, 546 F.2d 309, 313 (9th Cir. 1976), *cert. denied*, 430 U.S. 918 (1977); *United States v. Richardson*, 504 F.2d 357, 361 (5th Cir. 1974). We specifically approved similar language in *State v. Wentworth*, 118 N.H. 832, 838, 395 A.2d 858, 862 (1978). Thus we find no error here.

■ The trial court also instructed the jury that a reasonable doubt exists when the jurors "do not feel convinced to a moral certainty that the defendant is guilty of the charges against him." Authorities differ on the advisability of equating proof beyond a reasonable doubt with proof to a moral certainty. *Dunn v. Perrin*, *supra* at 24 (1st Cir. 1978). In the present case, however, we find

that the trial court clarified the reasonable doubt standard with additional instructions. The court stated that "the presumption of innocence alone is sufficient to acquit a defendant." The court further explained that "the burden is always upon the prosecution to prove guilt beyond a reasonable doubt. The burden never shifts to the defendant." When viewed in the context of the overall charge, these instructions "conveyed the correct concept of reasonable doubt." *State v. Belkner*, 117 N.H. 462, 471, 374 A.2d 938, 944 (1977).

Defendant also objects to the trial judge's instruction that a defendant "is presumed innocent at the outset and . . . that presumption lasts until there is credible evidence against him which would lead . . . to a contrary conclusion." Defendant contends that the term "credible evidence" implicitly contained a lesser standard of proof which the jury misconstrued and misapplied to its understanding of proof beyond a reasonable doubt. We disagree.

The character and credibility of the evidence are merely the scales by which the State's burden of proof is measured. Depending upon the believability of that evidence, the State may or may not be able to prove its case beyond a reasonable doubt.

It is well established that "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *State v. Belkner, supra* at 471, 374 A.2d at 944, *quoting Cupp v. Naughten*, 414 U.S. 141, 146–47 (1977); *State v. Black*, 116 N.H. 836, 838, 368 A.2d 1177, 1178 (1976), *cert. denied*, 431 U.S. 906 (1977). It is clear from the overall context of the instructions that the trial court conveyed the correct concept of reasonable doubt to the jury. We hold that the "effect of the phrase was harmlessly lost in the totality of the instructions." *State v. Black supra* at 837–38, 368 A.2d at 1179.

*Exceptions overruled.*

All concurred.