Hillsborough
No. 80-497

THE STATE OF NEW HAMPSHIRE

v.

NEIL D. BIRD

January 15, 1982

*Gregory H. Smith,* attorney general (*Donald J. Perrault,* attorney, on the brief and orally), for the State.

*Leonard, Prolman & Leonard,* of Nashua (*Richard W. Leonard* and *Thomas J. Leonard, III,* on the brief, and *Thomas J. Leonard, III,* orally), for the defendant.

BOIS, J. This is an appeal from a jury verdict finding the defendant guilty of manslaughter (RSA 630:2 (Supp. 1979)). The defendant claims that the Trial Judge (*Mullavey,* J.) gave defective instructions to the jury and that the evidence did not support the jury's verdict. We affirm the conviction.

From June 1978 to May 1980, the defendant lived with his girlfriend, Sandy Rassier, in his parents' cottage in Wilton, New Hampshire. During this period, Sandy worked full time, while the defendant held various odd jobs. Sandy managed the parties' finances; she paid their bills and maintained control over the balance of their earnings.

In the late afternoon of May 13, 1980, the defendant, who had arranged earlier to purchase a used car, waited for Sandy to arrive home from work so that he could obtain money from her with which to buy the car. When Sandy failed to return home by 5:30 p.m., the defendant telephoned Sandy's employer and was told that she had left with a fellow employee named David Stone.

While the defendant waited for Sandy to arrive, several of his friends joined him at the cottage. They drank beer and smoked marijuana from approximately 6:30 to 7:15. On several occasions, the defendant went outside and fired his shotgun. Anxious to buy the car, he was angry because Sandy had not yet returned home.

At 7:15 the defendant's friends departed, and he continued to

shoot the gun intermittently as he waited for Sandy. According to the testimony of a neighbor, Sandy arrived home at approximately 8:00 p.m. Twenty minutes later, the defendant, in a hysterical state, carried Sandy into the Milford Medical Center Emergency Room. An attending physician pronounced her dead as a result of numerous shotgun pellet wounds.

The defendant was indicted for second-degree murder. At trial, he testified that he had tripped over a stone wall while running toward Sandy with the loaded gun. He claimed that the gun discharged when he hit the ground, and that Sandy was killed by accident. At the close of all of the evidence, the trial judge instructed the jury on second-degree murder and the lesser-included offenses of manslaughter and negligent homicide. The jury found the defendant guilty of manslaughter, and the defendant instituted this appeal.

The defendant contends that the trial court deprived him of a fair trial because its jury instructions on second-degree murder and manslaughter were abstract and unintelligible.

The disputed instructions provided in pertinent part:

> "A person is guilty of murder in the second degree if he causes such death recklessly, under circumstances manifesting an extreme indifference to the value of human life. Recklessly is defined by our statute, as follows: A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. . . .

> Now, in addition to that, I might say that recklessly has been further defined, as follows: A person acts recklessly with respect to a result or to a circumstance described by this statute when he is aware of and consciously disregards a substantial and unjustifiable risk that such a result will occur.

> Now, in order for you to find the Defendant, Neil Bird, guilty of murder in the second degree, you must find that he acted recklessly with regard to the use of the shotgun fired at Sandra Rassier, being aware of and consciously disregarding the substantial and unjustifiable risk that the victim's death would result from his conduct. . . .

> . . .

> The first lesser and included offense [of second-degree

murder] is what is known as manslaughter, and I, will read the statute to you. Manslaughter is defined, as follows: a person is guilty of manslaughter when he causes the death of another recklessly. Recklessly, as used in that statute, is the same—is defined in the same manner which I read to you just a moment ago. . . . "

The defendant argues that the terms "reckless" and "cause," as used in the manslaughter statute (RSA 630:2 (Supp. 1979)), are technical terms which require more specific definitions than the court provided in its charge. He claims that the instructions on these terms were inadequate because they failed to contain clear definitions relating the terms to the particular facts of this case.

■■ A trial judge's primary duty in charging the jury is to clarify the issues of the case, and to assist the jury in understanding the questions to be resolved. *Commonwealth v. Litman,* 419 A.2d 121, 123 (Pa. Super. 1980). To this end, the judge must state the applicable law in clear and definite language. *See Elbel v. United States,* 364 F.2d 127, 134 (10th Cir. 1966), *cert. denied,* 385 U.S. 1014 (1967). *See generally* 3 ABA STANDARDS FOR CRIMINAL JUSTICE, *Trial by Jury* § 15-3.6, at 15-98 to 111 (1980). The court should provide more than abstract propositions of law; it should relate the pertinent law to the evidence and claims of the parties in the case before it. *State v. Skaff,* 94 N.H. 402, 407, 54 A.2d 155, 159–60 (1947).

■■ We must determine the propriety of the disputed jury instructions by considering them in their entirety. *State v. Langdon,* 121 N.H. 1065, 1068, 438 A.2d 299, 301 (1981). Reversal is unwarranted when a jury charge, as a whole, fairly covers the issues and law of a case. *See, e.g., State v. Weitzman,* 121 N.H. 83, 91, 427 A.2d 3, 8 (1981).

■ In the instant case, the trial judge indicated that the jury could find that "the defendant, Neil Bird," acted recklessly only if he was "aware of and consciously disregard[ed] the substantial and unjustifiable risk that the victim's death would result from his conduct." By specifically referring to the *defendant's* awareness and conscious disregard that death might result, the trial judge sufficiently related the law of recklessness to the particular facts of this case. Although the court's discussion concerned recklessness with respect to second-degree murder, we find that this discussion of recklessness was equally applicable to manslaughter. The court did not have to repeat the quoted language when it discussed

manslaughter, because the manslaughter charge followed immediately after the second-degree murder charge, and the language was still fresh in the minds of the jurors.

■ The trial judge read to the jury verbatim the statutory definition of "recklessly." In addition, he defined this term by quoting the definition of "recklessly" which the United States Supreme Court discussed in *Henderson v. Kibbe*, 431 U.S. 145, 149 (1977). Furthermore, following a jury request, the judge sent to the jury a typewritten copy of the statutory definition of "recklessly." The typewritten form clearly distinguished manslaughter, which requires recklessness, from negligent homicide, which does not require reckless conduct. We hold that the court's actions, as a whole, provided the jury with an adequate definition of "recklessly." *Cf. State v. Donovan*, 120 N.H. 603, 609, 419 A.2d 1102, 1106 (1980).

■■ We also find that the trial judge did not err in failing to provide a more specific definition of the term "cause." We note that no dispute existed in this case regarding the issue of causation, and that the word "cause" is not a technical term requiring an elaborate definition by the court. *Cf. State v. Nichols*, 236 Or. 521, 535, 388 P.2d 739, 745 (1964). We hold that, even if a dispute had existed regarding causation, the trial judge's definition of "recklessly" (awareness and conscious disregard of [a] substantial and unjustifiable risk of the victim's death) implicitly conveyed the correct concept of causation. *See Henderson v. Kibbe*, 431 U.S. at 156.

The defendant argues that the court's instructions were misleading because they referred to recklessness "with regard to use of the shotgun," while recklessness, under the second-degree murder and manslaughter statutes, more properly relates to the causation of death. He further claims that, by referring to *"the* substantial and unjustifiable risk" of death (emphasis added), the court effectively usurped the jury's role in determining whether *a* substantial and unjustifiable risk existed.

■ Although we agree with the defendant that the trial judge discussed recklessness with respect to use of the shotgun, and referred to *the* substantial and unjustifiable risk of death, we find that these statements did not prejudice the defendant. On several occasions, the judge correctly stated that recklessness must concern a material element of an offense or a circumstance described by a statute. As noted, he also read the second-degree murder and manslaughter statutes to the jury. After hearing the statutory lan-

guage, a reasonable juror would have concluded that causation of death constituted a material element of second-degree murder and manslaughter. By defining "recklessly" and reading the statutory elements of the respective offenses, the court effectively informed the jury that recklessness must relate to the causation of death. The court's reference to the reckless use of the gun therefore was harmless in the context of the overall instruction. *See State v. Donovan*, 120 N.H. at 609, 419 A.2d at 1106.

■ Similarly, throughout the charge, the court repeatedly stated that recklessness required an awareness and conscious disregard of *a* substantial and unjustifiable risk. As a result of these remarks, the jury would reasonably believe that it had the responsiblity to determine whether a substantial and unjustifiable risk actually existed. Because the trial judge referred to *the* substantial and unjustifiable risk on only one occasion, we conclude that this statement was also harmless.

■ The defendant next argues that the trial judge erred when he refused to instruct the jury that "in order to find reckless[ness] . . . the jury must find that the defendant intended to shoot the gun." We reject this argument because, under our law, recklessness does not require an intentional act. *See* RSA 630:2 (Supp. 1979). The defendant's requested instruction was an incorrect statement of law, and the trial court properly denied it.

In sum, we hold that the trial court's instructions, as a whole, were fair and adequate.

■ We now turn to the defendant's contention that the circumstantial evidence, which formed the basis for the jury's verdict, was insufficient to support a finding of guilt beyond a reasonable doubt. It is well established in this State that circumstantial evidence may be sufficient to support a conviction if it excludes all other rational conclusions. *State v. O'Malley*, 120 N.H. 507, 509, 416 A.2d 1387, 1388 (1980); *see State v. Scarlett*, 121 N.H. 37, 40, 426 A.2d 25, 27 (1981). In determining whether evidence supports a jury's verdict, we must consider the evidence in the light most favorable to the prosecution. *State v. Martin*, 121 N.H. 1032, 1034, 437 A.2d 308, 309 (1981); *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). We must decide whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Martin*, 121 N.H. at 1034, 437 A.2d at 309; *Jackson v. Virginia*, 443 U.S. at 318–19.

■ In this case, one witness testified that, on the day of the

shooting, the defendant stated that he would kill Sandy if she refused to give him money with which to buy the car. The defendant testified that he learned that Sandy had left work with another man, and that he was mad because Sandy did not return home immediately. In addition, one of the defendant's friends testified that, on the evening of the shooting, the defendant said he was going to kill somebody, and that he would shoot the bark off a tree to scare Sandy. Another friend testified that the defendant said he would shoot some bark off a tree to get his point across.

Furthermore, staff members at the Milford Medical Center testified that the defendant acknowledged that he shot Sandy, and that the police would be after him if she were dead. An expert witness stated, based on his examination of the evidence, that the defendant's gun was pointed directly at Sandy when it was fired, that the gun was unlikely to discharge accidentally, and that 172 of 222 pellets hit Sandy in the central part of her body.

Although the jury was free to reject this evidence, any rational trier of fact could have found, based on this evidence, that the defendant caused Sandy Rassier's death, and that he was aware of and consciously disregarded the risk that her death might result from his use of the loaded shotgun. *Cf. State v. Jones*, 120 N.H. 652, 654, 421 A.2d 1004, 1005 (1980). Certainly, the evidence supports a finding beyond a reasonable doubt that the defendant was guilty of manslaughter.

 Finally, we hold that the trial court properly denied the defendant's motion for acquittal on the second-degree murder charge. The evidence mentioned above clearly warranted submission of the second-degree murder charge to the jury.

*Exceptions overruled; affirmed.*

BATCHELDER, J., did not sit; the others concurred.