Carroll
No. 88-058

CAIN A. J. JOHNSTON,
by his father and next friend
JAMES M. JOHNSTON, AND
JAMES M. JOHNSTON, individually

v.

FRANK LYNCH

April 30, 1990

*Law Offices of James J. Kalled,* of Ossipee (*James J. Kalled* and *John P. Kalled* on the brief, and *John P. Kalled* orally), for the plaintiffs.

*Wiggin & Nourie,* of Manchester (*Fred J. Desmarais & a.* on the brief, and *Diane M. Smith* orally), for the defendant.

THAYER, J. This negligence action arose from a collision between an automobile driven by the defendant, Frank Lynch, and a bicycle ridden by Cain A. J. Johnston (Cain). Following a trial in the Superior Court (*McHugh*, J.), the jury returned a verdict for the defendant. The plaintiffs appeal from the jury verdict and the trial court's denial of their post-trial motion to set aside the verdict, alleging the following errors: (1) the verdict is against the weight of the evidence or is the product of plain mistake, passion, partiality or corruption; (2) the trial court erroneously excluded the opinion testimony of the investigating officer concerning fault, and the manner and cause of the collision; (3) the trial court erroneously excluded evidence of the defendant's leaving the scene of the accident; (4) the trial court's jury instructions misled the jury on vital issues, thereby causing undue prejudice to the plaintiffs; and (5) the trial court wrongfully compelled the plaintiffs to disclose the identity of an expert they did not intend to call as a witness at trial, to produce the expert for a deposition by the defendant, to produce statements taken by the plaintiffs' counsel from the investigating officer and two eyewitnesses, and to pay the defendant's costs of redeposing James M. Johnston (Mr. Johnston). For the reasons that follow, we affirm.

The facts are as follows. On July 27, 1983, around 10:50 a.m., thirteen-year-old Cain Johnston and two friends were at Patch's Store, in Glen, which is located on the south side of Route 302. The boys left

the store and began riding their bicycles in a westerly direction on the left side of the road. Soon thereafter, one of the boys crossed from the left to the right side of Route 302, still traveling west.

The defendant, who was driving an automobile, was also traveling west along Route 302. When he first saw the boys, there were two on the left side of the highway and one on the right. Mr. Lynch testified that he was driving approximately thirty miles per hour and was around 1,000 feet away from the boys when they first came into his view. The defendant explained that, when he saw the three boys, he immediately "let go of the gas." As he approached the boys, the one further away on the left crossed over to the right side of the highway. Then, out of the corner of his eye, the defendant saw the closer boy on the left, Cain, turn to come onto the road. The defendant testified that, when he saw Cain, he jammed on his brakes. However, he was unable to stop his car before colliding with the rear wheel of Cain's bicycle.

According to Cain, he looked both behind and in front of him before he crossed Route 302. He testified that after he had started across he "glanced back and saw a car coming, figured [he] had plenty of time to make it . . . [and] kept going." When he was almost across the highway, Cain heard tires squealing, and the next thing he remembered was starting to get up from the ground.

Following the collision, the defendant got out of his car and went over to Cain, who was already standing up. Mr. Lynch asked Cain whether he was hurt and offered to drive him to the hospital. Cain responded that he was "okay" and did not want any help from the defendant. Cain and his friends then started walking away, and the defendant followed them in his car. He stopped and got out of his car once more to make sure Cain was all right and to offer his assistance. However, after Cain repeatedly refused his help, Mr. Lynch drove off.

Cain's mother testified that after Cain told her about the accident, she noticed that Cain had a bump on his head, and scratches and bruises on his body. On the same day that the collision occurred, Cain's grandmother took him to see a doctor, who found that Cain suffered from nothing more than some bruises and abrasions. After learning a few days later that Cain was having headaches, the doctor had Cain's skull x-rayed. The x-rays came back indicating no skull fracture. In April, 1985, Dr. Abroms, who practiced in Worcester, Massachusetts, performed a pediatric neurological examination of Cain. Dr. Abroms concluded that although he had suffered a cerebral

concussion at the time of the injury, Cain's neurological evaluation was normal. Then, during the summer of 1985, another neurologist, named Dr. Poser, examined Cain. This doctor also determined that Cain had had a cerebral concussion, but contrary to Dr. Abroms, this doctor concluded that the concussion resulted in moderate to severe permanent brain damage.

Cain Johnston and his father brought suit by a writ of summons dated April 25, 1985, alleging that Mr. Lynch operated his automobile in a negligent manner, causing Cain to suffer permanent personal injuries, and his father to incur expenses for Cain's medical treatment. Following a two-week trial, the jury returned a verdict for the defendant. The plaintiffs filed a motion to set aside the verdict and for a new trial, which the court denied. This appeal followed.

The first argument the plaintiffs make on appeal is that the verdict is against the weight of the evidence or is the product of plain mistake, passion, partiality or corruption. Whether a jury verdict is against the weight of the evidence is a separate issue from whether it is the product of plain mistake, passion, partiality or corruption. *Panas v. Harakis & K-Mart Corp.*, 129 N.H. 591, 600–01, 529 A.2d 976, 982 (1987) (citing *Wisutskie v. Malouin*, 88 N.H. 242, 245–46, 186 A. 769, 771 (1936)). Both issues, however, are questions of fact for the trial court. *See Bennett v. Larose*, 82 N.H. 443, 447, 136 A. 254, 256 (1926). On appellate review, we will not disturb the trial court's ruling absent an abuse of discretion. *See Panas v. Harakis & K-Mart Corp.*, 129 N.H. at 599, 529 A.2d at 981. The standard that a trial court must apply in ruling on a motion to set aside a jury verdict is whether or not the verdict was reasonable in light of the evidence. *Id.* at 603, 529 A.2d at 983.

Initially we will address whether the trial court abused its discretion in failing to set aside the jury's verdict on the ground that it was against the weight of the evidence. Based on the evidence included in the record, the jury could have found that the defendant was traveling approximately thirty miles per hour when he first saw Cain and his friends about 1000 feet ahead of his car. Mr. Lynch testified that he took his foot off the gas when he saw the boys. He further testified that after seeing the boy farthest on the left cross to the right side of Route 302, out of the corner of his eye, he saw Cain turn into the highway. The jury could have found that Mr. Lynch jammed on his brakes when he became aware of Cain's crossing the highway, and that he was unable to stop quickly enough before colliding with Cain's bicycle. The jury also could have found from Cain's testimony

that he saw the defendant's car when he was halfway across Route 302, but that instead of turning back, Cain chose to continue across the road.

■■■■ In support of their position that Mr. Lynch was negligent in hitting Cain, the plaintiffs cite cases from other jurisdictions which hold that defendant motorists who strike children are negligent as a matter of law. The plaintiffs in effect are urging this court to adopt a theory of strict liability in cases involving collisions between motorists and children. However, since 1956 this court has limited its application of strict liability for damages to cases involving consumers of unreasonably dangerous and defective products. *Bagley v. Controlled Environment Corp.*, 127 N.H. 556, 559, 503 A.2d 823, 825 (1986). Moreover, we have held that "a motorist is not an insurer against all accidents involving injuries to children. . . ." *Ross v. Express Co.*, 100 N.H. 98, 100, 120 A.2d 335, 336 (1956). Instead, both the child and the driver owe each other the reciprocal duty to act reasonably under the circumstances. *Shimkus v. Caesar*, 95 N.H. 286, 287, 62 A.2d 728, 729 (1948); *see Dorais v. Paquin*, 113 N.H. 187, 188, 304 A.2d 369, 371 (1973) (child normally held to standard of care reasonable for children of like age, intelligence and experience). Contrary to the plaintiffs' position, "[t]he issues of fault on the part of each operator cannot be so simply decided as by considering only the physical possibility of vision that each had of the other. . . . Whether each exercised reasonable care must be determined in the discretion of the jury by all the circumstances under which each respectively acted." *Shimkus v. Caesar*, 95 N.H. at 287, 62 A.2d at 729. Based on the evidence presented at trial, we hold that a jury could reasonably conclude that the defendant was not negligent in the operation of his automobile, and we accordingly hold that the trial court did not err in failing to set aside the verdict on the ground that it was against the weight of the evidence.

■■■ Having concluded that the trial court did not abuse its discretion in refusing to set aside the verdict as against the weight of the evidence, we now consider whether the trial court erred in refusing to set aside the verdict on the ground that it was the product of plain mistake, passion, partiality or corruption. In *Panas v. Harakis & K-Mart Corp.* this court discussed a trial court's setting aside a verdict on these grounds:

"Undoubtedly, it is possible to demonstrate that the jury made an affirmative mistake, as for example, by rendering

internally inconsistent findings that manifest legal error. Similarly, the fact that the jury had been bribed would warrant setting aside a verdict on the basis of corruption. The crucial distinction is that in a motion to set aside a verdict because of mistake, partiality, or corruption, the moving party must demonstrate the mistake, partiality or corruption as grounds independent of a verdict conclusively against the weight of the evidence. As a practical matter, it will often be easier to demonstrate that the verdict was conclusively against the weight of the evidence than it will be to demonstrate jury mistake."

129 N.H. at 603, 529 A.2d at 983–84. The jury in this case did not return internally inconsistent findings. Additionally, the plaintiffs have failed to demonstrate that the verdict was the result of passion, corruption or partiality. For these reasons, we hold that the trial court did not err in denying the plaintiffs' motion to set aside the verdict on the ground that it was the product of plain mistake, passion, partiality or corruption.

The second argument the plaintiffs make on appeal is that the trial court erroneously excluded the opinion testimony of the investigating officer concerning fault, and the manner and cause of the collision. Prior to trial, the defendant filed a motion *in limine* to exclude the expert testimony of Officer Moulton, the investigating officer. The court responded that it would defer making a ruling until the trial.

The record indicates that Officer Moulton did not arrive at the scene of the accident until after Cain's bicycle and Mr. Lynch's automobile had been moved from the site. He conceded at trial that he did not consider himself to be an accident reconstructionist expert. His opinion concerning fault, and the manner and cause of the collision, was based on his examination of the accident site after the vehicles had been removed, photographs taken by Mr. Johnston, statements made by the plaintiffs and the defendant, and interviews with several witnesses, most of whom testified at trial. The jury went to the scene of the accident the day before the trial began, where they were able to examine the site. Moreover, the photographs on which the officer relied were introduced into evidence. Essentially all of the evidence on which the officer based his opinion was available to the jury. When the officer was asked whether he thought the jury would be able to determine how the collision occurred based on this evidence, he answered in the affirmative. After the defendant asked

the court to rule on the admissibility of the officer's opinion regarding the fault and causation of the accident, the trial judge ruled that the officer's opinion would not be admissible, explaining that "any opinions that he could give are opinions that any layman could reach, . . . based upon what they see and what this jury is going to see." While the trial court excluded the officer's testimony regarding the fault and cause of the collision, it did not exclude his testimony concerning the manner of the accident, as the plaintiff alleges.

 The trial court has wide discretion in admitting or excluding an expert opinion, and we will not reverse its ruling unless there is a "clear abuse of discretion." *Tullgren v. Phil Lamoy Realty Corp.*, 125 N.H. 604, 609, 484 A.2d 1144, 1148 (1984) (quoting *Peters v. McNally*, 123 N.H. 438, 440, 462 A.2d 119, 121 (1983)). Even if the opinion testimony bears directly on a main issue, the evidence is admissible if it will help the jury arrive at the truth. *Brown v. Cathay Island, Inc.*, 125 N.H. 112, 116, 480 A.2d 43, 45 (1984); *see* N.H. R. Ev. 702. However, we have held that the opinions of a police officer on fault and causation, which are mixed questions of law and fact, must be excluded. *Saltzman v. Town of Kingston*, 124 N.H. 515, 524, 475 A.2d 1, 6 (1984). We stated in that opinion:

> "[A] witness may not testify to an opinion or conclusion which contains matters of law. On mixed questions of law and fact the jury, after being properly instructed by the court as to the law, can draw the required conclusion from the facts as well as can the expert, so that the opinion of the witness, be he expert or layman, is superfluous in the sense that it will be of no assistance to the jury."

*Id.* at 524–25, 475 A.2d at 6 (quoting *Prudential Insurance Co. of America v. Uribe*, 595 S.W.2d 554, 566 (Tex. Civ. App. 1979)). Because Officer Moulton's opinion testimony concerning the fault and cause of the collision would have involved mixed questions of law and fact, and also because the evidence on which his opinion rested was available to the jurors so that his testimony would not have assisted them in their search for the truth, we hold that the trial court correctly excluded the opinion testimony of Officer Moulton.

The next argument the plaintiffs make is that the trial court abused its discretion in excluding evidence that the defendant left the scene of the accident. The defendant filed a pre-trial motion *in limine* to prevent the plaintiffs from introducing evidence of the defendant's having left the scene of the accident after the collision occurred. The trial court granted the defendant's motion, and the

plaintiffs argue that the circumstances surrounding Mr. Lynch's departure from the scene were probative on the issue of his culpability. Specifically, the plaintiffs argue they should have been permitted to introduce and develop evidence of the fact that Mr. Lynch left the scene without leaving his name, address and telephone number with Cain's parents, and without notifying the police.

The circumstances surrounding Mr. Lynch's leaving the scene became an issue during trial, when the court was asked to give an instruction concerning what facts it would allow into evidence. In ruling that the events that took place after the accident other than conversations between Cain and Mr. Lynch would not be admitted, the court explained that Mr. Lynch

> "in his conduct asked several questions of the boy before leaving. This certainly is not the situation where he knows he's made an impact, doesn't slow down, speeds up and has—shows by his actions a willful intent to run away from the situation. If that were the evidence, then I think that is probative, and I think that has some bearing on culpability, but that's not the evidence here, and I'm concerned that perhaps the prejudicial effect of what took place after the accident is very close to, if not outweighing, any probative value that that evidence might have."

The law is well established that a trial court has broad discretion in ruling on the admissibility of evidence, and we will not disturb its ruling absent an abuse of discretion. *See Fenlon v. Thayer*, 127 N.H. 702, 705, 506 A.2d 319, 321 (1986); *Brown v. Cathay Island, Inc.*, 125 N.H. at 115–16, 480 A.2d at 44; N.H. R. Ev. 104(a). While evidence of a defendant's flight is admissible to show consciousness of guilt, see *State v. Glidden*, 123 N.H. 126, 134, 459 A.2d 1136, 1141 (1983), the evidence in this case reveals that Mr. Lynch did not flee from the scene of the accident. Accordingly, we hold that the trial court did not abuse its discretion in excluding from the jury evidence of the circumstances following the collision.

The plaintiffs next argue that the trial court's denial of four of the plaintiffs' requested jury instructions, and the granting of two of the defendant's requested instructions, misled the jury on vital issues, thereby constituting undue prejudice to the plaintiffs. The purpose of jury instructions is to identify the factual issues which are material for a resolution of the case, and to inform the jury of the appropriate standards by which they are to decide them. *Gagnon v.*

*Crane*, 126 N.H. 781, 788, 498 A.2d 718, 723 (1985); *State v. Bird*, 122 N.H. 10, 15, 440 A.2d 441, 443 (1982). As long as the court adequately states the law that applies to the case, it is not necessary that it use the identical language requested by a party. *State v. Taylor*, 121 N.H. 489, 495–96, 431 A.2d 775, 779 (1981). A jury charge is adequate if, "taken as a whole, 'it fairly present[s] the case to the jury in such a manner that no injustice [is] done to the legal rights of the litigants.'" *Rawson v. Bradshaw*, 125 N.H. 94, 100, 480 A.2d 37, 41 (1984) (quoting *Poulin v. Provost*, 114 N.H. 263, 264, 319 A.2d 296, 297 (1974)). "[T]he test for determining whether an erroneous civil jury charge is reversible error is whether the jury *could have been* misled." *Bernier v. Demers*, 121 N.H. 217, 218, 427 A.2d 514, 515 (1981) (citing *Lindberg v. Swenson*, 95 N.H. 184, 187, 60 A.2d 458, 460 (1948)) (emphasis in original).

The plaintiffs' proposed jury instruction Number 1, which the trial court denied, reads as follows:

"Because of the disparity between the injury-producing capacity of a car when compared to that of a child on a bicycle, I instruct you that in determining the standard of care required in given circumstances, the greater the degree of danger the higher is the amount of care required."

(Citation omitted.)

In refusing to give the above charge, the trial court instructed the jury that "all drivers on our highways have a duty to use due care at all times to avoid or prevent harm to others." The court also explained that "[n]egligence is the failure to use reasonable care. Reasonable care is that degree of care which an ordinary, prudent person would use under the circumstances." Later in its charge, the court stated: "Every driver of a vehicle shall exercise due care to avoid colliding with any person propelling a human-powered vehicle, and shall given an audible signal when necessary, and shall exercise proper precaution upon observing any child."

 Although in an earlier time a trial court was thought to have discretion to comment on the evidence when instructing the jury, *Cleveland v. Reasby*, 92 N.H. 518, 521, 33 A.2d 554, 556 (1943), this practice was not followed as a matter of course, *see Cook v. Brown*, 34 N.H. 460, 470 (1857) (it is not ordinary practice for court to comment on evidence), and accepted modern practice is not to do so. The initial portion of the plaintiffs' requested instruction involved a comment on the evidence, and we hold that it was not error for the court to decline giving this portion of the instruction. The remainder

of the requested charge is merely a statement of the standard of reasonable care that does not differ in substance from the instruction given by the court. Since a court need not adopt the exact wording of a party's requested instruction as long as the jury is adequately instructed on the proper law to apply, *see State v. Taylor*, 121 N.H. at 495–96, 431 A.2d at 779, the trial court did not commit error in denying the plaintiffs' requested instruction Number 1.

The next instruction the plaintiffs allege the court erred in denying was their instruction Number 11, which states:

> "On determining issues such as speed you are entitled to interpret the severity of impact as indicated by the evidence of physical impact and damage and in accordance with your common knowledge and experience."

The record indicates that the bent bicycle rim was introduced as an exhibit during trial, and the court instructed the jury that they could consider the exhibits during their deliberations. The court also explained in detail that the jury was entitled to rely on circumstantial evidence and told the jurors that, in reaching their verdict, they were obligated to consider all of the evidence, giving each piece the weight they found it deserved.

While the defendant's speed prior to the collision was most likely a factor which the jury considered in determining whether Mr. Lynch was negligent in the operation of his automobile, the court was not obligated to encourage the jurors to speculate on the defendant's speed based on the bent bicycle rim. The court properly instructed the jury about circumstantial evidence, and the plaintiffs were entitled neither to the court's comment on the evidence, nor to the exact wording they desired concerning circumstantial evidence. *State v. Taylor*, 121 N.H. at 495–96, 431 A.2d at 779. Hence, we hold that the trial court did not err in refusing the plaintiffs' requested instruction Number 11.

The third instruction that the plaintiffs claim the court erred in not granting was their proposed Number 26, which provides:

> "Evidence has been presented that Frank Lynch fled from the scene of the collision. You may consider flight as tending to show feelings of guilt. You may also consider feelings of guilt as evidence tending to show actual guilt. You should consider the evidence of flight by Frank Lynch in connection with all other evidence in the case."

(Citations omitted.)

 During trial the court excluded evidence of the circumstances surrounding the defendant's leaving the scene of the accident because the court found the defendant exhibited no "willful intent to run away from the situation." Having ruled that the prejudicial effect of this evidence outweighed any probative value it might have had, the court did not err in denying the plaintiffs' requested instruction Number 26.

The final proposed instruction that the plaintiffs argue the court should have granted is their Number 27, which reads:

> "You are hereby instructed that if you find the parties are equally negligent, or that the defendant is more negligent than the plaintiff, then at the very least you must return a verdict for the plaintiff in some amount. This is because Dr. Bagan has conceded that as a result of this collision Cain has suffered at least a cerebral concussion and anterograde and retrograde amnesia. In the event that you find that Cain's injuries are more extensive than a cerebral concussion and amnesia, then your award must, in addition, include full, fair and complete compensation for all his injuries, past and future, bodily, emotional and mental, in consequence of the defendant's negligence."

When the court delivered its charge, it instructed the jury about the comparative fault standard. The court explained that if the jurors found that the parties were equally negligent, or that the defendant was more negligent than Cain, that they would then determine the amount of damages sustained. The court told the jurors that a person claiming damages has the burden of proving that damages were in fact suffered, and that they were caused by the wrongful conduct of another. The court then told the jury they could consider the reasonable value of past and future medical care, future tutoring expenses, and reasonable compensation for any past and future pain, discomfort, fears, anxiety and other mental and emotional distress suffered when determining the amount of damages that the plaintiffs were entitled to recover.

 A jury is not obligated to award a plaintiff damages, even if it finds for the plaintiff on the liability issue. *See Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977). Moreover, weighing the evidence is a proper function of the jurors, who are not bound to accept even uncontested testimony. *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 350, 415 A.2d 671, 674 (1980). For these reasons, the trial court did not err in refusing to instruct

the jury that they must award damages to the plaintiffs if they found that the defendant was as negligent or more negligent than Cain, and in refusing to comment on Dr. Bagan's testimony. The court informed the jurors of the types of damages they could consider, which did not differ substantively from those described in the plaintiffs' requested instruction. Because the plaintiffs are not entitled to the exact language of their requested instruction, see State v. Taylor, 121 N.H. at 495–96, 431 A.2d at 779, and since the court properly instructed the jury about comparative negligence and damages, we hold that the court did not commit error in denying the plaintiffs' proposed instruction Number 27.

 The plaintiffs next argue that the trial court erred in granting two of the defendant's proposed instructions. In accordance with the defendant's requested Number 17, the court instructed the jury that "the defendant had the right of way." Under similar facts involving a collision between a motorist and a bicyclist, we stated, "Neither party had a statutory right of way . . . ; each owed to the other the reciprocal duty to act reasonably." Shimkus v. Caesar, 95 N.H. at 287, 62 A.2d at 729. In this case, the court did not instruct the jury that the defendant had a statutory right of way. Moreover, the plaintiff Cain's admission obviates the need to address any non-statutory right of way that may have existed. During trial, Cain was asked on cross-examination, "Now, if you are going across that roadway, all right, and head north, was it your understanding that you were to yield the right of way to cars that were going westerly?" Cain answered "Yes." In light of this plaintiff's concession that cars traveling in a westerly direction had the right of way, the court's instruction, even if erroneous, was harmless.

 The final error that the plaintiffs assign to the trial court concerning the defendant's requested instructions is also without merit. The portion of the defendant's proposed instruction Number 20 which the court allowed and to which the plaintiffs object states: "Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway." This instruction is merely a recital of the rules of the road. See RSA 265:16. Contrary to the plaintiffs' allegation, this instruction did not direct the jury to find that the defendant had the right of way as a matter of law at the time of the accident. Instead, this portion of the charge informed the jury of the applicable law in effect at the time of the collision, and aided them in determining the factual issue of the defendant's negligence. See Gagnon v. Crane, 126 N.H. at 788, 498 A.2d at 723 (purpose of jury in-

struction is to explain rules of law applicable to issues of fact). Accordingly, we hold that the trial court did not err in granting the defendant's proposed instruction Number 20.

 The plaintiffs next argue that the trial court abused its discretion in compelling the plaintiffs to disclose the identity of an expert they did not intend to call as a witness at trial, to produce this expert for a deposition by the defendant, to produce statements taken by the plaintiffs' counsel from the investigating officer and two eyewitnesses, and to pay the defendant's costs of redeposing Mr. Johnston. New Hampshire law favors liberal discovery, *Yancey v. Yancey*, 119 N.H. 197, 198, 399 A.2d 975, 976 (1979), and the trial court has broad discretion in controlling its scope, *Scontsas v. Citizens Insurance Co.*, 109 N.H. 386, 388, 253 A.2d 831, 833 (1969). This court has recognized that "discovery is an important procedure 'for probing in advance of trial the adversary's claims and his possession or knowledge of information pertaining to the controversy between the parties. [The] underlying purpose is to reach the truth . . . .'" *Id.* at 388, 253 A.2d at 832–33 (quoting *Hartford Accident &c. Co. v. Cutter*, 108 N.H. 112, 113, 229 A.2d 173, 175 (1967)).

The record discloses that prior to trial, the defendant moved to compel the plaintiffs (1) to disclose the identity of Dr. Abroms, the physician who examined Cain in Worcester, Massachusetts, after the collision; (2) to provide the defendant with Dr. Abroms' medical records and copies of the statements of the two boys who were bicycling with Cain at the time of the accident, and of the investigating officer, that were taken by the plaintiffs' counsel shortly after the collision; and (3) to pay the cost of additional depositions of the plaintiffs concerning the examination and treatment of Cain by Dr. Abroms. The plaintiffs objected to the defendant's motion to compel, arguing that the information sought was protected under the attorney work product doctrine as reflected in Superior Court Rules 35.b(2) and (3). Following a hearing, the trial court granted the defendant's motion without providing reasons therefor. There is no evidence in the record either that the defendant asked the plaintiffs to produce Dr. Abroms or that the court ordered the plaintiffs to produce him.

The scope of discovery in New Hampshire is set forth in Superior Court Rule 35, which provides in part:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . including . . . the identity and

location of persons having knowledge of any discoverable matter . . . ."

SUPER. CT. R. 35.b(1). The rule continues that:

"[A] party may obtain discovery of documents and tangible things otherwise discoverable . . . prepared in anticipation of litigation or for trial by or for another party . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means . . . ."

SUPER. CT. R. 35.b(2). With respect to information known and opinions held by an expert whom a party has retained but does not expect to call as a witness, the rule provides that:

"A party may discover facts known or opinions held . . . only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

SUPER. CT. R. 35.b(3)(b).

 The rule quoted above does not indicate whether a party is entitled to discover the identity of an adversary's expert whom the adversary does not intend to call as a witness at trial, and there are no State cases directly on point. *But see Fenlon v. Thayer*, 127 N.H. at 707, 506 A.2d at 322 (court may, under exceptional circumstances, compel one party's expert to testify at trial as opponent's witness). However, federal precedent indicates that pursuant to the federal rules of discovery, which are essentially the same as the State rule quoted above, *see* FED. RS. CIV. PROC. 26(b)(1), 26(b)(4)(B), the identity of an expert whom the opposing party has retained but does not expect to call as a witness is discoverable without any special showing of exceptional circumstances. *See Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 303 (E.D. Pa. 1980); *Baki v. B. F. Diamond Const. Co.*, 71 F.R.D. 179, 181–82 (D. Md. 1976). Based on the federal law and our preference for liberal discovery, we hold that a party may discover the identity of an expert the opposing party has retained but does not intend to call at trial, absent some evidence that the information is irrelevant, privileged or for some other reason should not be disclosed, none of which is claimed here. *See Baki v. B. F. Corp.*, 71 F.R.D. at 182. Accordingly, the trial court did not err in compelling the plaintiffs to disclose the identity of Dr. Abroms.

■ As far as Dr. Abroms' medical records and notes are concerned, we also hold that the trial court did not err in compelling the plaintiffs to produce this information to the defendant. Experts' reports obtained by a lawyer are almost always considered to be part of his or her work product. *Willett v. General Elec. Co.*, 113 N.H. 358, 359, 306 A.2d 789, 790 (1973). However, this does not automatically protect them from discovery if "relevant facts are unobtainable by other means, or are obtainable only under such conditions of hardship as would tend unfairly to prejudice the party seeking discovery. . . ." *Riddle Spring Realty Co. v. State*, 107 N.H. 271, 275, 220 A.2d 751, 756 (1966); *see* SUPER. CT. R. 35.b(3)(b).

■ The record indicates that Dr. Abroms, who examined Cain in April of 1985, was the first neurologist to examine Cain after the accident. Dr. Poser, who examined Cain in July, 1985, held the opinion that Cain had suffered a concussion and exhibited symptoms of post-concussion syndrome. Dr. Poser stated that post-concussion syndromes are limited events which may last, in his experience, for three to four years. In November of 1987, Dr. Bagan performed an independent medical examination on Cain at the defendant's request, and he found no signs of post-concussion syndrome. Dr. Bagan examined Cain over four years after the collision occurred, and by this time, the defendant's opportunity to determine independently whether Cain had sustained post-concussion syndrome was irretrievably lost. The results of Dr. Abroms' examination of Cain in 1985 were therefore critical and irreplaceable evidence concerning Cain's condition during the period of time when he would have suffered from post-concussion syndrome. These circumstances are sufficiently exceptional to warrant the plaintiffs' production of Dr. Abroms' records to the defendant, and we hold that the trial court did not commit error in ordering the plaintiffs to produce this information. *See* SUPER. CT. R. 35.b(3)(b); *Willett v. General Electric Co.*, 113 N.H. at 360–61, 306 A.2d at 791 (change in condition of product at issue in case demonstrates that factual and conclusory determinations of opponent's experts may be necessary to party and otherwise unobtainable); *see also Dixon v. Cappellini*, 88 F.R.D. 1, 3 (M.D. Pa. 1980) (where plaintiff placed physical and psychological condition at issue, and where independent medical examination by defendant would not compare to medical reports by plaintiff's expert made shortly after litigated incident, defendant demonstrated sufficient exceptional circumstances to obtain earlier reports).

 The plaintiffs also object to the trial court's order compelling them to produce statements taken by their counsel from the investigating officer and the two boys who were riding bicycles with Cain at the time of the collision. As we stated earlier, a trial court has the authority to determine the scope of discovery, and we will not reverse its rulings absent an abuse of discretion. *See Scontsas v. Citizens Insurance Co.*, 109 N.H. at 388, 253 A.2d at 833.

 The record indicates that the plaintiffs' counsel took statements from the two boys two months after the accident, and the investigating officer several months thereafter. The plaintiffs did not initiate this lawsuit until two years after the collision. In his motion to compel, the defendant claimed that these witnesses' statements were vital to defending the plaintiffs' claims, and that he was unable to obtain the substantial equivalent of these witnesses' statements because their memories had faded during the intervening time. Keeping in mind the trial court's broad discretion in ordering discovery, we cannot say that the court abused its discretion in compelling the plaintiffs to produce these witnesses' statements. *See* SUPER. CT. R. 35.b(2); *United States. v. Murphy Cook & Co.*, 52 F.R.D. 363, 364 (E.D. Pa. 1971) (mere lapse of time in itself enough to justify production of material otherwise protected as work product).

 The final issue before us is whether or not the trial court abused its discretion in ordering the plaintiffs to pay the cost of additional depositions of Cain and Mr. Johnston concerning the examination and treatment of Cain by Dr. Abroms. In light of our holding above that the trial court did not err in ordering the plaintiffs to disclose Dr. Abroms' identity and to produce his medical records and notes on Cain, we further hold that the trial court did not abuse its discretion in also ordering the plaintiffs to pay the defendant's costs of redeposing the plaintiffs concerning Dr. Abroms' examination.

*Affirmed.*

All concurred.