**THE STATE OF NEW HAMPSHIRE**

HILLSBOROUGH, SS                                                                          SUPERIOR COURT
NORTHERN DISTRICT

New Hampshire Electric Cooperative, Inc.

v.

Consolidated Communications of Northern New England, LLC

Docket No. 216-2020-CV-00555

**<u>ORDER</u>**

Plaintiff brought this action against Defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment/*quantum meruit*. Plaintiff also seeks a number of declaratory judgments pertaining to the timing, effect, and scope of the termination of an agreement between the parties. Defendant has filed a counterclaim, seeking its own declaratory judgments and alleging claims for rescission (or reformation), breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Presently before the Court are Defendants' motions to compel (Doc. 106), for a voluntary non-suit (Doc. 91), and to continue the trial and suspend the previous case structuring order ("CSO") (Doc. 109). Plaintiff objects. (Compel (Doc. 121); Non-suit (Doc. 101); Continue 125.)) The Court held a hearing on August 21, 2023. As articulated at the hearing, and for the reasons that follow, Defendants' motions are GRANTED.

    I.    <u>Motion to Compel</u>

In its present motion, Defendant seeks "hard copy, original vegetation management contractor invoices for the period between 2016 and March 2020." (Doc. 106 at 1.) At the hearing, Plaintiff represented that it has already produced multiple

large boxes of invoices from 2019 and 2020 and the remaining two boxes of invoices contain invoices from 2016-2018, which is outside of its claimed damages period in the case. Defendant maintains that it needs all the invoices to properly defend against Plaintiff's sought damages and to determine if there are inconsistencies among the invoices.

At the hearing, the Court agreed with Defendant that although the remaining documents' probative value may be somewhat limited, the invoices nevertheless were relevant to Defendant's anticipated defense. *See Super. Ct. R. 21*(b) ("[P]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party."). Specifically, even invoices prior to 2019 may help bolster Defendant's defense if the invoices demonstrate a change over time compared to the most recent contractor invoices. Especially in light of the New Hampshire Supreme Court's preference for liberal discovery, the Court finds that Defendant is entitled to the two remaining boxes of contractor invoices. *See Yancey v. Yancey*, 119 N.H. 197, 198 (1979). Plaintiffs agreed to produce these documents by September 8, 2023.

Defendant further contends that it is entitled to the two boxes of invoices free of cost. In support thereof, Defendant argues that throughout the pending litigation, each party has paid for its own production of materials. Further, Defendant points out that Plaintiff should have turned over these documents as part of its automatic disclosures or at the very latest, in response to Defendant's first request for production of documents. Plaintiff informed the Court at the hearing that it would roughly cost between $6,000 and

$8,000 to produce the remaining invoices. Specifically, Plaintiff explained that the hard copies will be converted into a digital format and thus delivered to Defendant electronically. Plaintiff asserts that Defendant should share the cost of production because of the amount of labor involved and Defendant's delay in obtaining the documents.

The Court agrees with Plaintiff. Courts have broad discretion in allocating discovery costs. *See Johnston by Johnston v. Lynch*, 133 N.H. 79, 97 (1990) (finding that the trial court was within its discretion to order plaintiffs to pay the cost of additional depositions). The Court acknowledges, as Plaintiff points out, this litigation has been on-going for over three years and the saga over these particular records has dragged on for months. The Court will briefly recount Defendants' attempts to obtain the invoices to illustrate why Defendant should share the cost of production with Plaintiff.

On December 28, 2020, Plaintiff delivered documents to Defendant as part of its automatic disclosures but did not include the contractor invoices. On February 11, 2021, Defendant sent Plaintiff the following request for production: "All communications and documents exchanged between [Plaintiff] and third-party contractors describing [Plaintiff's] maint[enance] re-clearing, storm damage cleanup and/or hazard tree policies and procedure since 2005." (Doc. 106 ¶ 8.) In the same request, Defendant also sought "[a]ll communications and documents regarding [Plaintiff's] claim for damages in this litigation." (*Id.* ¶ 10.) Plaintiff maintained that it produced all relevant invoices from 2019 and 2020 as a part of its automatic disclosures, which Defendant argues was not responsive to what it requested. (*Id.* ¶¶ 12–13.)

Until December 2022, Defendant focused on other discovery issues in the midst of the withdrawal of its initial attorney due to health reasons. Defendant still believed that the documents Plaintiff provided was not responsive to its requests for contractor invoices. On December 5, 2022, Defendant served a fourth request for documents on Plaintiff, this time explicitly asking for "all invoices for vegetation management and/or maintenance re-clearing." (*Id.* ¶ 18.) Plaintiff objected to the request as duplicative of Defendant's previous requests but agreed to provide the copies of the sought invoices. (*Id.* ¶ 19.) At the hearing, Plaintiff represented that it had informed Defendant that its requested invoices were in hard copies in five banker boxes that Defendant could inspect at its own leisure. Defendant clarified at the hearing that it still seeks nearly 32,000 pages of contractor invoices which Plaintiff informed Defendant that they possess but did not produce. (*Id.* ¶ 19.)

Contrary to Defendant's contentions, Defendant did not explicitly ask for contractor invoices until December 2022. The Court agrees with Plaintiff that Defendant's first document request was ambiguous about the exact documents that Defendant sought. On the other hand, it has now been almost a year since Defendant explicitly asked for contractor invoices and Plaintiff still has not yet produced all responsive materials. Thus, the Court finds that the actions of both parties have contributed to delay in production of the contractor invoices. Accordingly, considering the labor intensive nature of converting the hard copy invoices to an electronic format and the limited probative value of the invoices sought, the Court here uses its discretion to require each party to contribute evenly to the cost of production of the remaining two boxes of contractor invoices. *See Johnston by Johnston*, 133 N.H. at 97.

4

II.     Motion for Voluntary Non-Suit

Defendant moves to non-suit its counterclaims III–V without prejudice.  (Doc. 91 at 1.)  At the hearing, Defendant explained that the issues in counterclaims III–V relate to poll setting issues, and in an effort to streamline the case, as Plaintiff asked Defendant to do, seeks to voluntarily non-suit the claims so the current litigation can focus squarely on the vegetation management issue.  Plaintiff objects, arguing that Defendant's counterclaims should be dismissed with prejudice given the lengthy litigation and Defendant's dilatory conduct throughout.  (Doc. 101 ¶ 2.)  At the hearing, Plaintiff conceded that given the choice between a voluntary non-suit without prejudice and continuing with counterclaims III–V in the current case, Plaintiff would rather the Court grant the voluntary non-suit without prejudice.

Here, as the Court ruled at the hearing, the Court does not feel it is warranted to force Defendant to voluntary non-suit its counterclaims with prejudice.  Though Plaintiff did not specifically request Defendant to voluntarily non-suit its counterclaims, Plaintiff did ask Defendant to streamline the case if possible.  The Court agrees that a voluntary non-suit here accomplishes that goal.  Defendant explained at the hearing that the damages sought for counterclaims III–V are distinct from the other counts in the case, demonstrating that it makes sense for those claims to be tried separately from the vegetation management issue.

This is not a situation where granting the non-suit without prejudice would entitle Defendant to a legal right it would not otherwise be entitled to.  *See Total Serv., Inc. v.*

*Promotional Printers, Inc.*, 129 N.H. 266, 268–69 (1987) (holding that where a voluntary non-suit would essentially amount to a continuance where plaintiff was barred from seeking further continuances, the trial court was within its discretion to grant the non-suit with prejudice). Granting Defendant's requested non-suit without prejudice would not negatively impact the current proceedings in front of the Court but would rather create a streamlined case that will benefit both parties. *See id.* Moreover, the prejudice to Plaintiff if Defendant were to re-file its counterclaims is mitigated by the fact that the filings still must comply with the requisite statute of limitations period. Accordingly, Defendant's motion to voluntarily non-suit its counterclaims III–V without prejudice is GRANTED.

III. Motion to Continue and Suspend CSO

Lastly, Defendant moves to continue the trial date and suspend the current CSO in the case. Currently, the case is scheduled for a five-day jury trial within the last two weeks of October 2023 with a deposition deadline of August 24, 2023. Defendant seeks a continuance because the delay in discovery, especially with the contractor invoices, prevented Defendant from deposing Plaintiff's witnesses before the August 24, 2023 deadline. (Doc. 109 at 1.) At the hearing, Defendant further explained that they will also need additional time to go through the soon-to-be produced contractor invoices before they can complete their required depositions. Defendant seeks a new deposition deadline of at least December 2023.

Plaintiff objects, arguing that Defendant's dilatory conduct caused its own hardship. Further, Plaintiff points out that Defendant could have continued deposing its witnesses even without the invoice data and completed said depositions once it has had

6

the opportunity to review the invoices.  Ultimately, Plaintiff contends that because the case has been ongoing for over three years, any additional continuances would prejudice Plaintiff because Defendant's conduct unilaterally caused the delay.  Plaintiff allows that a short continuance is warranted in the case but maintains that the jury trial should be scheduled no later than January 2024.

At the hearing, the Court granted Defendant's motion to continue.  Although the Court recognizes that perhaps Defendant could have been more diligent in deposing Plaintiff's witnesses while awaiting the rest of the discovery, the Court finds that it would be impractical to expect both parties to be ready to try this case by January 2024 given the amount of outstanding discovery remaining.  However, once Defendant receives the rest of the contractor invoices, the Court expects both parties to work diligently to keep the case on track.  Accordingly, Defendant's motion is GRANTED and the new case deadlines are as follows: (1) the discovery deadline on January 31, 2024; (2) expert disclosures on February 29, 2024; (3) expert rebuttals on March 15, 2024; (4) trial management conference and deadline for motions *in limine* on April 22, 2024; and (5) jury selection on May 6, 2024.

SO ORDERED.

September 12, 2023

_____
David A. Anderson
Associate Justice